SALERNO, Appellant, v. CITY OF RACINE and another, Respondents.

*No. 310. Submitted under sec. (Rule) 251.54 January 4, 1974.—Decided February 5, 1974.*
(Also reported in 214 N. W. 2d 446.)

The cause was submitted for the appellant on the briefs of *Kolbe, Sharp & Arena,* attorneys, and *Duane L. Arena* of counsel, all of Racine, and for the respondent

on the brief of *Jack Harvey*, city attorney, and *Edward A. Krenzke*, deputy city attorney.

ROBERT W. HANSEN, J.   The plaintiff sees two roads open to the destination of municipal liability for the use of excessive force in making an arrest by a city police officer. Both are blocked by the same statute.[1]

*Intentional tort.*   No challenge is raised on appeal to the trial court's sustaining the city's demurrer to the plaintiff's first cause of action based on the alleged commission of an assault and battery by an agent or employee of the city. Sec. 895.43 (3), Stats., provides that no suit may be brought against a city for the intentional torts of its employees. Assault and battery constitutes an intentional tort.[2] The trial court sustained the city's demurrer to the first cause of action, holding that sec. 895.43 (3) establishes municipal immunity against action for intentional torts of its employees. We agree that it does.

*Duty to discharge.*   The second cause of action is based on the claim that the city negligently retained the police officer involved in its employ after he had "demon-

[1] Sec. 895.43 (3), Stats., providing as follows: "No suit shall be brought against any political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor shall any suit be brought against such fire company, corporation, subdivision or agency or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."

[2] *See: Strong v. Milwaukee* (1968), 38 Wis. 2d 564, 157 N. W. 2d 619 (holding false arrest and false imprisonment to be an "intentional tort," precluding direct action against the municipality); and *Nelson v. Milwaukee* (1973), 57 Wis. 2d 166, 203 N. W. 2d 684 (also holding false arrest to be such an "intentional tort"). Intent to cause harmful contact is a required element in assault and battery. *See:* Restatement, 1 *Torts* 2d, p. 25, sec. 13; p. 37, sec. 21 (1965).

strated a propensity to use excessive force." At the demurrer stage, we will assume, as the complaint alleges, that the city "knew or should have known of said propensities." For the purpose of this discussion, we will assume both the existence of a duty owed by the city to plaintiff and its breach by the city not seeking to remove the officer involved from police service.[3] We need not determine whether such breach of duty would be separate and distinct from an employer's responsibility under *respondeat superior*.[4] For the threshold question becomes whether the city's earlier failure to seek and accomplish the discharge of the police officer referred to involves performing a quasi-judicial function. Sec. 895.43 (3), Stats., precludes any suit against any municipality in this state "for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."

[3] As to negligence in selection or retention of employee by employer, *see:* Prosser, *Torts* (4th ed. 1971), p. 460, sec. 70, stating: "Once it is determined that the man at work is a servant, the master becomes subject to vicarious liability for his torts. He may, of course, be liable on the basis of any negligence of his own in selecting or dealing with the servant . . . upon familiar principles of agency law. . . ." *See also:* Restatement, *Torts* 2d, p. 98, sec. 307, and Restatement, *Agency* 2d, sec. 213, p. 458, sec. 213.

[4] *See:* 53 Am. Jur. 2d, *Master and Servant*, pp. 435–438, sec. 422, stating that there is a split in the authorities as to whether a cause of action against the employer for negligence is distinct from the cause of action for liability under *respondeat superior*, and as to whether recovery against an employer under the negligence theory is permitted only where the plaintiff is a fellow servant of the party committing the tort. *See also:* 57 C. J. S., *Master and Servant*, p. 270, sec. 559. (Plaintiff was such fellow servant in negligence of employer in employing incompetent person in *Molaske v. Ohio Coal Co.* (1893), 86 Wis. 220, 56 N. W. 475, and *Kliefoth v. Northwestern Iron Co.* (1898), 98 Wis. 495, 74 N. W. 356, but plaintiff was not fellow employee in *Linden v. City Car Co.* (1941), 239 Wis. 236, 300 N. W. 925, where demurrer was sustained on the ground that employment was not a proximate cause of plaintiff's injury.)

In sustaining the city's demurrer to the second cause of action, the trial court held that ". . . the discharge of the officer would necessarily entail quasi-judicial action by the Board of Police and Fire Commissioners after the filing of a complaint." Actually, the removal of an officer from police service involves three steps: (1) The filing of a complaint;[5] (2) the holding of a hearing by the commission;[6] and (3) the selection of removal or discharge as the appropriate penalty by the commission.[7] If the duty owed by the city was to not retain the officer in police service and if the breach of duty was in not accomplishing earlier his removal, all three steps are involved in the claim of failure to act. The bringing of a complaint, the conducting of a hearing and the imposition of the penalty of removal from the service are alike required for the result of discharge of a violence-prone member of a police force.

In a recent case where a complaint was filed by the chief of police and, following a hearing, the fire and police commission ordered the discharge of a police officer, this court termed the proceedings "a quasi-

[5] Sec. 62.13 (5) (b), Stats., providing: "Charges may be filed against a subordinate by the chief, by a member of the board, by the board as a body, or by an elector of the city. . . ."

[6] Sec. 62.13 (5) (d), Stats., providing: "Following the filing of charges in any case, a copy thereof shall be served upon the person charged. The board shall set date for hearing not less than 10 days nor more than 30 days following service of charges. The hearing on the charges shall be public, and both the accused and the complainant may be represented by an attorney and may compel the attendance of witnesses by subpoenas which shall be issued by the president of the board . . . ."

[7] Sec. 62.13 (5) (e), Stats., providing: "If the board determines that the charges are not sustained, the accused, if he has been suspended, shall be immediately reinstated and all lost pay restored. If the board determines that the charges are sustained, the accused, by order of the board, may be suspended or reduced in rank, or suspended and reduced in rank, *or removed,* as the good of the service may require." (Emphasis supplied.)

judicial function."[8] Plaintiff counters that, while this may properly describe the filing of charges and conducting the hearing, it is not appropriate to definitively describe not filing a complaint and not conducting a hearing. Police chief, commission, commissioner or elector are not required to file a complaint.[9] This court has said that a police chief has the duty to file charges against department offenders "when he considers their conduct is detrimental to the public service."[10] It follows that the chief and commissioners have the right not to file charges unless such chief or commissioners consider conduct brought to their attention to be detrimental to the public service. In this state a prosecuting attorney has the right to order or not to order a coroner's inquest.[11] Upholding the right of a district attorney not to order an inquest, this court stated that the discretion involved "approaches the quasi-judicial."[12] The reference is not alone to the prosecutor's ordering of an inquest. It applies as well to a prosecutorial decision not to order an inquest. Not to file charges against a

[8] *State ex rel. Richey v. Neenah Police & Fire Comm.* (1970), 48 Wis. 2d 575, 580, 180 N. W. 2d 743, holding, ". . . The Board of Fire & Police Commissioners of the city of Neenah was, in this action, performing a quasi-judicial function . . . ."

[9] Sec. 62.13 (5) (b), Stats., providing: "Charges *may be filed* against a subordinate by the chief, by a member of the board, by the board as a body, or by an elector of the city. . . ." (Emphasis supplied.)

[10] *Christie v. Lueth* (1953), 265 Wis. 326, 333, 61 N. W. 2d 338, stating: ". . . The chief is responsible for the discipline, good order and efficiency of the police department. As such, it is one of his duties to file charges against departmental offenders when he considers their conduct is detrimental to the public service. . . ."

[11] *State ex rel. Kurkierewicz v. Cannon* (1969), 42 Wis. 2d 368, 166 N. W. 2d 255.

[12] *Id.* at page 378, holding: "The district attorney in Wisconsin is a constitutional officer and is endowed with a discretion that approaches the quasi-judicial." Citing *State v. Peterson* (1928), 195 Wis. 351, 359, 218 N. W. 367.

police officer is an exercise of a discretionary right by the public official involved just as much and just as clearly as would be the filing of charges. Filing or not filing can be challenged,[13] but not on the basis that electing not to file charges is somehow something entirely different than deciding to file such charges. As the trial court stated in its opinion, ". . . only complete removal from the force . . . would remove the offending officer from employment." As to the police and commission members, the determining to file or not to file is related to, in fact, an integral part of the procedure for disciplinary proceedings against police officers. From the filing or not filing of charges, through the hearing to the imposition of appropriate penalty, the entire procedure of disciplinary proceedings against police department members is within the scope of the statutory reference to acts done in the exercise of a quasi-judicial function. The trial court sustained the city's demurrer to the second cause of action, holding that sec. 895.43 (3), Stats., applies, establishing municipal immunity against actions for negligence for acts done in the exercise of quasi-judicial functions. We agree that it does.

*By the Court.*—Order affirmed.

[13] *Id.* at pages 383, 384, stating: ". . . We conclude that the legislature did not intend to set an objective standard that any fact or circumstance was sufficient reason for the district attorney to believe that there had been criminal activity resulting in a death and thereby requiring him to call an inquest. The district attorney was no doubt selected by the legislature to make this determination because, with his experience and training, he could make the subjective judgment required by the statute.

"This, of course, is not to say that his decision may rest upon prejudice or caprice. . . ."