Patricia HARKNESS, Plaintiff-Appellant,

v.

PALMYRA-EAGLE SCHOOL DISTRICT,
Defendant-Respondent.†

Court of Appeals

*No. 89-2185. Submitted on briefs May 24, 1990.—Decided
August 2, 1990.*

(Also reported in 460 N.W.2d 769.)

†Petition to review denied.

568

For the plaintiff-appellant the cause was submitted on the briefs of *Bruce Meredith* and *Valerie Gabriel* of *Wisconsin Education Association Council* of Madison.

For the defendant-respondent the cause was submitted on the brief of *Charles H. Bohl* and *Curtis A. Paulsen* of *Frisch Dudek, Ltd.,* of Milwaukee.

Brief of amicus curiae was filed by *Michael J. Julka* and *Jill Weber Dean* of Madison on behalf of *Wisconsin Association of School Boards, Inc.*

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.   Patricia Harkness, a probationary special education teacher in the Palmyra-Eagle School District, appeals from a summary judgment dismissing her complaint against the district. After the district board voted not to renew her teaching contract, Harkness sued for reinstatement and substantial money damages, claiming that the board had violated sec. 118.22(3), Stats., which sets forth the procedures to be followed by school districts desiring not to renew non-tenured teachers' contracts. In particular, she asserted that the board violated a provision of the law providing for a "private conference" between the members of the board and the affected teacher prior to nonrenewal when Jackie Christiansen, a board member who was also the parent of a special education student in Harkness's class and who, according to Harkness, was biased against her, was

570

allowed to participate in the proceedings.[1]

The issues are: (1) whether the board is immune from suit for both damages and injunctive relief under sec. 893.80, Stats., because the acts complained of were "discretionary," rather than "ministerial" in nature; and (2) to the extent that immunity does not attach, whether summary judgment is appropriate on Harkness's claim that she was not afforded the "private conference" prior to nonrenewal as contemplated by sec. 118.22(3), Stats.

We conclude that the immunity afforded the district by sec. 893.80, Stats., applies to Harkness's claim for reputational and other personal injury, but not to her claim for reinstatement. We also conclude that the affidavits raise genuine issues of material fact with respect to the reinstatement claim and that, as a result, the district's motion for summary judgment was improperly granted on that claim.[2]

Harkness was a probationary teacher in the district's special education program during the 1987–88

---

[1]Initially, Harkness also sued Christiansen, but after the parties stipulated that any actions taken by Christiansen were within the scope of her authority as a board member, she was dismissed from the action.

[2]In summary judgment cases, we apply the same methodology as the trial court. We look first to the complaint to ascertain whether it states a claim for relief, then to the answer to see whether the issues are joined. If they are, we consider the moving party's affidavits to determine whether they state a *prima facie* case for recovery (or a defense). If they do, we look to the opposing party's affidavits to see whether any material factual disputes exist. If there are none, summary judgment may be appropriate, and we will consider the legal issues raised by the motion. *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 477 (1980).

Following that methodology, we are satisfied, as we will explain, that summary judgment was appropriate on Harkness's damage claim but not her claim for reinstatement.

school year. In early February, 1988, the board began the procedures mandated by sec. 118.22(3), Stats., for nonrenewal of her contract. The statute provides:

> At least 15 days prior to giving written notice of refusal to renew a teacher's contract for the ensuing school year, the employing board shall inform the teacher by preliminary notice . . . that the board is considering nonrenewal . . . and that, if the teacher files a request . . . *the teacher has the right to a private conference with the board prior to giving written notice of refusal to renew his [or her] contract.* [Emphasis added.]

Harkness requested and was granted the conference required by the statute, and, at its conclusion, she declined the board's offer to resign. Shortly thereafter Harkness received a "final" notice of nonrenewal and eventually commenced this action.

Her complaint alleges that one of the board members voting with the four to three majority not to renew her contract was Jackie Christiansen, whose son was a student in one of her special education classes. She asserts that during the school year she and Christiansen had "a series of disputes" over the boy's disruptive conduct in class and appropriate teaching techniques and disciplinary measures to be applied to him, and that as a result of all this, Christiansen had developed a "substantial personal interest" in the matter and thus "was unable to render an unbiased decision" or "participate in a meaningful private conference" with respect to the renewal or nonrenewal of Harkness's contract.

The complaint concludes by stating that, as a result of these "unlawful actions," Harkness suffered "loss of income and professional reputation" and requests "damages in the sum of $100,000.00 and reinstatement to her previous position."

The district's answer contains general and specific denials and also raises several affirmative defenses, including the assertion that the complaint fails to state a cause of action because the district is immune from suit under sec. 893.80(4), Stats., which provides that:

> No suit may be brought against any . . . political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes, nor may any suit be brought against such . . . agency . . . for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

In order to ascertain whether, in light of the district's governmental immunity defense, Harkness's complaint states a claim for which relief may be granted, we must take care to separate and distinguish her two causes of action. As indicated, she claims money damages for the district's "wrongful acts"; and she also seeks prospective relief in the form of reinstatement to her teaching position. Because Harkness's action has two components—damages and prospective, injunctive-type relief—the first question is whether sec. 893.80, Stats., applies to either or both of those claims.

## I. IMMUNITY: THE CLAIM FOR DAMAGES

We first consider the statute's application to Harkness's claim for money damages for wage loss and alleged reputational injury.

We have outlined the allegations of Harkness's complaint earlier in this opinion. In sum, she claims that the district failed to comply with the "private conference" requirement of sec. 118.22, Stats., because Christiansen's presence would render any conference meaningless in light of her bias and resultant inability to render a fair

and unbiased decision with respect to Harkness's continued employment with the district. As a result, Harkness claims that the board wrongfully and "unlawful[ly]" terminated her employment, causing the damages for which she seeks monetary redress.

The immunity of public bodies and officials for acts undertaken in their official capacities derives from the common law. Among the public policy considerations underlying the rule are these: (1) the danger of influencing public officials in the performance of their duties by the threat of suit; (2) the drain on valuable, taxpayer-financed time involved in defending such actions; and (3) "the feeling that the ballot and removal procedures are more appropriate methods of dealing with misconduct in public office." *Lister v. Board of Regents,* 72 Wis. 2d 282, 299, 240 N.W.2d 610, 621 (1976). More specifically, the Wisconsin rule, as it evolved in the common law and eventually in the language of sec. 893.80, Stats., "was developed on grounds of public policy, namely to protect public officers from being unduly hampered or intimidated in the discharge of their functions by threat of lawsuit . . .." *Scarpaci v. Milwaukee County,* 96 Wis. 2d 663, 682, 292 N.W.2d 816, 825 (1980).

As we have noted, sec. 893.80(4), Stats., grants immunity to municipalities for "quasi-legislative" and "quasi-judicial" acts, and those terms have been held to be synonymous with "discretionary" acts. *Scarpaci,* 96 Wis. 2d at 683, 292 N.W.2d at 826. Thus, a public officer or body is immune from suit where the act or acts complained of are "discretionary," as opposed to merely "ministerial," and the terms have been discussed and applied in several cases.

Generally, a discretionary or quasi-legislative or quasi-judicial act "involves the exercise of discretion and judgment . . .." *Kimpton v. School District of New Lisbon,* 138 Wis. 2d 226, 234, 405 N.W.2d 740, 743 (Ct. App. 1987), quoting *Lifer v. Raymond,* 80 Wis. 2d 503, 511-12, 259 N.W.2d 537, 541 (1977). A nonimmune "ministerial" act, on the other hand is one "where the . . . duty is absolute, certain and imperative, involving merely the performance of a specific task," and "the time, mode and occasion for its performance" are defined "with such certainty that nothing remains for the exercise of judgment and discretion." *C.L. v. Olson,* 143 Wis. 2d 701, 717, 422 N.W.2d 614, 620 (1988).

The *Olson* court also noted two other instances where immunity may not attach:

> [Where] there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion . . . [and] where a public officer's challenged decision involves the exercise of discretion but the discretion exercised is not governmental . . ..[3] *Id.,* 143 Wis. 2d at 717-18, 422 N.W.2d at 620.

In support of its motion for summary judgment, the district submitted a single affidavit—that of its director of special education, who outlined the notices given to

[3]As examples of these "non-governmental" decisions, the court cited the medical discretion involved in the performance of an autopsy or the providing of medical or psychiatric treatment, as discussed in *Scarpaci v. Milwaukee County,* 96 Wis. 2d at 686-88, 292 N.W.2d at 827, *Protic v. Castle Co.,* 132 Wis. 2d 364, 370, 392 N.W.2d 119, 122 (Ct. App. 1986), and *Gordon v. Milwaukee County,* 125 Wis. 2d 62, 67, 370 N.W.2d 803, 806 (Ct. App. 1985).

Harkness and the procedures leading up to the final notice of nonrenewal of her contract. The affidavit also incorporated the terms of the collective bargaining agreement between the district and its teachers for the period in question.

Harkness filed several affidavits opposing the motion. In the first, her union representative stated that the board denied Harkness's request that Christiansen recuse herself from the conference and from all participation in the decision to renew or not renew Harkness's contract. Aside from that, the affidavit contains a variety of nonevidentiary hearsay and statements of opinion and impression that are inappropriate for consideration in a summary judgment proceeding. *Fritz v. McGrath,* 146 Wis. 2d 681, 689, 431 N.W.2d 751, 755 (Ct. App. 1988).

Harkness's own affidavit also contains considerable nonevidentiary material. It does, however, assert that, at Christiansen's request, the school's special education director gave her son special treatment which affected other students in Harkness's class, that Christiansen had interfered directly in Harkness's class preparation and planning with respect to her son—again to the detriment of others in the class—and that on several occasions Harkness refused to comply with Christiansen's "demands" for special treatment for her son. Finally, the affidavit of one of Harkness's fellow teachers details many other instances where Christiansen injected herself into a variety of school and classroom matters.

From this evidentiary basis, Harkness argues that the district should not be immune from suit because the acts of which she complains were not quasi-judicial or quasi-legislative within the meaning of sec. 893.80, Stats.—that they were merely ministerial, rather than discretionary. In sum, she contends that the district had

a nondiscretionary, ministerial duty to provide her with a fair and "meaningful" private conference prior to deciding not to renew her contract which, because of Christiansen's "decision not to recuse herself" from participating in the conference, it failed to do.

Harkness's claims center on Christiansen's participation in the "private conference" mandated by sec. 118.22, Stats. Whether the decision to participate—or, as Harkness frames it, the decision not to "recuse" herself from participation in the conference—was made by Christiansen herself or the board as a group, it is the type of decision the law treats as discretionary, rather than ministerial. Plainly, it involves "the exercise of discretion and judgment." It is not a situation where the duty to act one way or the other "is absolute, certain and imperative," leaving nothing for the exercise of judgment.

Harkness disagrees, arguing first that even though the process related to an employment decision—normally a discretionary act—*Scarpaci, Protic,* and *Gordon,* which she describes as the "underlying judicial precedent" in *C.L. v. Olson,* compel a contrary result in this case. We are not persuaded.

*Scarpaci, Protic,* and *Gordon* all involved surgical and medical treatment decisions by physicians and psychologists. In *Scarpaci,* the court ruled that, while the decision whether to undertake an autopsy in a particular case was discretionary, decisions involving the actual methods employed in performing the autopsy procedure were "medical, not governmental," and thus immunity did not attach to the manner in which the pathologist performed the autopsy. *Id.,* 96 Wis. 2d at 686, 292 N.W.2d at 827. *Protic* was a medical malpractice action against a physician employed by the state. As in *Scarpaci,* we held that the manner in which the doctor

rendered postsurgical medical care to the plaintiff patient was not the sort of "governmental decisionmaking which is entitled to immunity." *Protic,* 132 Wis. 2d at 370, 392 N.W.2d at 122. Finally, *Gordon* involved a decision by the treatment director of a mental health center to release a patient who, shortly thereafter, was injured when he attempted to commit suicide by driving his car into a wall. Again relying on the distinctions drawn in *Scarpaci,* we held that while the decision to release was discretionary, there could be liability on the part of other center personnel in examining and diagnosing the patient.

No such distinctions exist in this case. The private conference under sec. 118.22, Stats., is but one step in the decision whether to retain or terminate a probationary employee. It is an employment decision. And in *Kimpton,* 138 Wis. 2d at 236, 405 N.W.2d at 745, we held that a school board's acts of "hiring and supervising [an employee] . . . are no less discretionary—no less 'quasi-judicial'—than decisions on whether to fire an employee, whether to convene an inquest or perform an autopsy, or whether to release a patient from a hospital," all of which, as we have just noted, have been held immune. We believe the same principles apply here.

Harkness next argues that "Christiansen's decision not to recuse herself [from the private conference] was not a quasi-judicial act within the meaning of sec. 893.80, Stats." Again, we disagree. Here, too, a member's decision to recuse herself or himself from a particular matter coming before the board does not involve the type of absolute, certain and imperative duty the cases have termed "ministerial." Rather, the decision involves judgment and discretion in assessing the recusal request in light of all of the facts of the particular case and in light of the purpose of the private conference mandated

578

by sec. 118.22, Stats., and the duties and obligations of school board membership.

We conclude, therefore, that the board is immune from Harkness's damage suit under sec. 893.80, Stats.

## II. IMMUNITY: THE REINSTATEMENT CLAIM

As indicated, Harkness's complaint also seeks non-monetary injunctive relief in the form of an order reinstating her to her former teaching position, and we must thus consider whether sec. 893.80, Stats., applies to that claim.

Section 893.80, Stats., was enacted in response to the supreme court's decision in *Holytz v. Milwaukee,* 17 Wis. 2d 26, 115 N.W.2d 618 (1962), the case abrogating the historic common-law doctrine of municipal tort immunity. The opinion makes it clear that the immunity being addressed by the court in *Holytz* was "the [municipality's] liability . . . *for torts,"* as opposed to other forms of action; and the court specifically invited the legislature, if it wished, to adopt laws limiting recovery and otherwise regulating how recovery might be obtained against municipalities for the torts of its officers and employees. *Id.* at 39–40, 115 N.W.2d at 625 (emphasis added).

The Wisconsin Legislature accepted the invitation and enacted sec. 331.43, Stats. (1963), which now appears as sec. 893.80, Stats. Thus, the immunity abrogated by the court and reinstated in limited form by the legislature is immunity from *tort* liability. We have found no authority indicating that it applies to equitable or injunctive relief. Indeed, in *Kaiser v. City of Mauston,* 99 Wis. 2d 345, 356, 299 N.W.2d 259, 266 (Ct. App.

1980), we held that a similar statute[4] providing that "no claim may be brought [or maintained] against a city" unless certain time and notice-of-claim conditions were met, "[did] not apply to a claim for equitable relief, such as [a] request for an injunction . . .." *See also Hasslinger v. Village of Hartland,* 234 Wis. 201, 205, 290 N.W. 647, 649 (1940) (statute requiring filing of claim before bringing action against a municipality, "or statutes having a similar purpose," held inapplicable to actions for equitable relief, such as one for abatement of a nuisance), *overruled on other grounds, Costas v. Fond du Lac,* 24 Wis. 2d 409, 415, 129 N.W.2d 217, 220 (1964).

We see no reason why sec. 893.80, Stats., is not similarly limited. We conclude, therefore, that sec. 893.80(4), Stats., does not bar Harkness's claim for reinstatement.

## III.  SUMMARY JUDGMENT: THE REINSTATEMENT CLAIM

Thus, we must consider the validity of Harkness's contention that she is entitled to trial on her reinstatement claim because Christiansen's presence on the board denied her the fair and "meaningful" private conference before an impartial tribunal to which she was entitled under sec. 118.22, Stats.

Harkness's claim is not grounded on the due process clauses of either the federal or state constitutions. It is purely statutory. She concedes that, as a probationary employee, sec. 118.22, Stats., is the sole source of the procedural rights she claims were violated by the board in this case. She suggests, however, that "many of the rights deemed significant" in traditional due process

---

[4]Section 62.25(1), Stats.

analysis—notably the right to an impartial decisionmaker—"should also be considered important in determining whether she received a legally sufficient private conference."

Harkness's argument is based primarily on *Faust v. Ladysmith-Hawkins School Systems,* 88 Wis. 2d 525, 277 N.W.2d 303 (1979). In that case, the teacher, who, like Harkness, had no tenure rights to her position, argued that her right to a private conference under sec. 118.22, Stats., was violated because the board had made "a preliminary determination" not to renew the contract prior to holding the conference.

Discussing the "procedural rights" afforded the complaining teacher by sec. 118.22, Stats., the *Faust* court stated:

> The provisions of that statute advance the legislatively declared public policy of promoting fairness and thoughtful decisionmaking in the rehiring of public school teachers. In addition, it establishes a comprehensive and orderly procedure governing the renewal or nonrenewal of teacher contracts in school districts which have no tenure system. These procedures inure to the benefit of not only the teacher and the school district but to the public at large. *Id.* at 533, 277 N.W.2d at 306.

Then, considering the teacher's argument that the private conference afforded her was "mere window dressing," and a "sham," because the board had already made a "final decision" not to renew, the *Faust* court stated:

> [The] characterization of the board's initial decision as final is not supported by the record. It is indeed apparent that the board did make a preliminary decision not to renew . . . before sending the . . . preliminary written notice. It is quite another thing, however, to conclude that the subsequent [pri-

vate] conference was merely "window dressing" and "a sham." To so hold, it would be necessary either to assume or to find *bad faith* on the part of the board and to find *an unwillingness to listen* to any information which would be a reason to renew the contract.

Were there evidence that [the] board *followed a pattern of action which showed that the conferences provided were a mere sham,* a different conclusion might be reached. The record here does not bear out any such *pattern of bad-faith action. . . .* [T]here has been no showing of *a bad-faith refusal to reconsider a decision.*

. . ..

There is nothing in the record from which the trial court could have concluded that the conference *was merely pro forma in nature and was conducted in bad faith. Id.,* 88 Wis. 2d at 534–35, 277 N.W.2d at 307 [emphasis added].

■

We read *Faust* as affirming that: (1) the private conference provided by sec. 118.22, Stats., is part of a process designed to promote "fairness and thoughtful decisionmaking" in the rehiring of teachers; and (2) while there is a presumption of good faith on the part of official decisionmakers, where there is evidence that the conference was a "mere sham," in that it was undertaken in "bad faith," or with "an unwillingness to listen," or was "merely *pro forma* in nature," it may not meet the requirements of the statute. These, then, are the procedural rights at stake in this lawsuit.

■

We have discussed the parties' positions and the affidavits submitted in connection with the summary judgment motion in some detail. We also have noted that our review of summary judgments is, in effect, *de novo,*

for we employ the same methodology, and are guided by the same legal principles, as the trial court. One of those principles is, of course, that, to be entitled to summary judgment, the moving party must demonstrate that "there is no triable issue of material fact on any issue presented." *Maynard v. Port Publications, Inc.*, 98 Wis. 2d 555, 563, 297 N.W.2d 500, 505 (1980) (citations omitted). And in making that determination the court, trial or appellate, must resolve any reasonable doubts as to the existence of an issue of material fact *against* the moving party—here, the school district. *Id.* Finally, we note that even in cases where the proofs do not reveal actual factual conflicts, if, under the guidelines just stated, it appears that "reasonable inferences leading to conflicting results can be drawn from [the] undisputed facts . . . summary judgment is improper." *Cameron v. City of Milwaukee*, 102 Wis. 2d 448, 459, 307 N.W.2d 164, 170 (1981) (citation omitted).

Harkness's affidavits assert facts relating to Christiansen's intense personal and family interests in the manner in which Harkness related to Christiansen's son in the performance of her teaching duties and the existence of ongoing disputes between them in this regard. Those facts, if proved at trial, could reasonably permit the finder of fact to infer that, as a result of Christiansen's participation in the procedures and proceedings relating to Harkness's continued employment under sec. 118.22(2), Stats., Harkness was denied the "fair and thoughtful," "[good] faith" private conference to which she was entitled. *Faust*, 88 Wis. 2d at 533-34, 277 N.W.2d at 306-07. Depending upon the weight a fact finder might attribute to these inferences, conflicting results might ensue, and in such a situation summary

judgment will not lie. *Cameron,* 102 Wis. 2d at 459, 307 N.W.2d at 170.

We conclude, therefore, that the trial court properly granted summary judgment dismissing Harkness's cause of action for damages on immunity grounds. We also conclude that Harkness is entitled to trial on her claim for reinstatement because the affidavits raise issues and inferences of disputed facts material to her claim that the "private conference" provisions of sec. 118.22, Stats., were not properly followed as a result of Christiansen's participation in the process.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded for further proceedings consistent with this opinion.