Phillip J. SHERIDAN, Plaintiff-Appellant,†

v.

CITY OF JANESVILLE, a municipal corporation, J.M. Brophy, and Doug Johnson, individually and in their official capacities, Defendants-Respondents.

Court of Appeals

*No. 90-2591. Submitted on briefs May 8, 1991.—Decided August 29, 1991.*

(Also reported in 474 N.W.2d 799.)

†Petition to review denied.

422

For the plaintiff-appellant the cause was submitted on the briefs of *Joseph F. Owens* of *Arthur & Owens, S.C.* of New Berlin.

For the defendant-respondent the cause was submitted on the briefs of *Larry W. Barton* of *Nowlan & Mouat* of Janesville.

Before Eich, C.J., Dykman and Sundby, JJ.

DYKMAN, J.  Phillip Sheridan appeals from a summary judgment dismissing his complaint against the city of Janesville and two Janesville police officers, J.M. Brophy and Doug Johnson. Sheridan was arrested by Brophy and Johnson for driving while intoxicated. Sheridan brought this negligence action against defendants for damages resulting from the injuries he sustained during the arrest. The trial court found that defendants were immune from suit. We affirm.

## I.  BACKGROUND

On December 3, 1988, at approximately 2:30 a.m., Officer Brophy observed a car, driven by Sheridan, weaving between two lanes of traffic. Brophy stopped Sheridan's car, which carried "disabled" license plates. Sheridan informed Brophy that he had recently had neck surgery.

Brophy requested that Sheridan perform a number of field sobriety tests. After he was unable to complete the tests, Brophy informed Sheridan that he was under arrest for operating a motor vehicle while under the influence of an intoxicant. Assisted by Officer Johnson, Brophy placed Sheridan in the back seat of the squad car and transported Sheridan to the Rock County Sheriff's Department. Sheridan sued defendants for injuries

received while the police officers were performing the sobriety tests and executing the arrest.

## II. STANDARD OF REVIEW

Summary judgment is governed by sec. 802.08, Stats., and follows a well established "methodology." *See In re Cherokee Park Plat,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983). Our review is *de novo* and independent of the trial court's decision. *Laesch v. L&H Indus., Ltd.,* 161 Wis. 2d 887, 891, 469 N.W.2d 655, 656 (Ct. App. 1991).

## III. OFFICERS BROPHY AND JOHNSON

We first examine the complaint to determine whether a claim for relief has been stated. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). The complaint alleges that Brophy negligently failed to allow Sheridan "to forego field sobriety tests" and to allow Sheridan use of his cervical collar during and after the tests. The complaint further alleges that Johnson negligently denied Sheridan use of the collar, forcibly kicked his feet apart, forcibly grasped his neck and pushed his head down while assisting him into the squad car.

To determine whether a claim for relief has been stated, we examine defendants' assertion that they are immune from suit for the activity alleged in the complaint. "The objection of an officer's civil immunity, affecting as it does his substantive liability for damages, is properly presented by a demurrer on the ground that the complaint fails to state a cause of action." *C.L. v. Olson,* 143 Wis. 2d 701, 706, 422 N.W.2d 614, 615 (1988)

(quoting *Lister v. Board of Regents,* 72 Wis. 2d 282, 299, 240 N.W.2d 610, 621 (1976)).

The general rule is that a public officer is immune from personal liability for injuries resulting from acts performed within the scope of the individual's public office. *C.L.,* 143 Wis. 2d at 710, 422 N.W.2d at 617. This rule is subject to a number of exceptions. First, a public officer is liable for damages resulting from the negligent performance of a purely ministerial duty. *Lister,* 72 Wis. 2d at 300–01, 240 N.W.2d at 621–22. Second, a public officer is afforded no immunity for conduct that is malicious, wilful and intentional. *Id.* at 302, 240 N.W.2d at 622.

Section 893.80(4), Stats., grants immunity to public officers and bodies for "quasi-judicial" and "quasi-legislative" acts. In *Scarpaci v. Milwaukee County,* 96 Wis. 2d 663, 683, 292 N.W.2d 816, 826 (1980), the court stated that the terms "quasi-judicial or quasi-legislative" and "discretionary" were synonymous. A quasi-judicial or quasi-legislative or discretionary act " 'involves the exercise of discretion and judgment.' " *Harkness v. Palmyra-Eagle School Dist.,* 157 Wis. 2d 567, 575, 460 N.W.2d 769, 772 (Ct. App. 1990) (quoting *Kimpton v. School Dist. of New Lisbon,* 138 Wis. 2d 226, 234, 405 N.W.2d 740, 743 (Ct. App. 1987)). A public officer's duty is ministerial "only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Lister,* 72 Wis. 2d at 301, 240 N.W.2d at 622 (footnote omitted).

In *Lister,* the court held that the statutory duties of a public officer charged with determining residency status for tuition purposes were not prescribed "with such certainty that nothing remained for the administrative officer's judgment and discretion." *Id.* Similarly, in *Lifer v. Raymond,* 80 Wis. 2d 503, 259 N.W.2d 537 (1977), the court found that a licensing examiner's decision to allow an overweight woman to drive involved an exercise of governmental discretion. The court stated that:

> The complaint does not allege that the motor vehicle division has promulgated internal rules which establish the maximum pounds permitted per inch of height. Any determination by a road test examiner that by reason of excess poundage a particular applicant was unable to exercise reasonable control over a motor vehicle is entirely an exercise of judgment on his part.

80 Wis. 2d at 510, 259 N.W.2d at 541.

Even where a public officer's duties are not prescribed by law to the extent that "nothing remains for judgment or discretion," his or her negligent acts will not be immunized if "the danger is compelling and known to the officer and is of such force that the public officer has no discretion not to act." *C.L.,* 143 Wis. 2d at 715, 422 N.W.2d at 619 (footnote omitted). Thus, in *Cords v. Anderson,* 80 Wis. 2d 525, 259 N.W.2d 672 (1977), the court held liable a public park manager for injuries resulting from his negligence in failing to erect signs warning the public of a dangerous condition on a trail or notify his supervisors of the condition. *Id.* at 541, 259 N.W.2d at 679–80.

Sheridan concedes, and we agree, that a claim that the police officers were negligent in deciding whether or

not to arrest Sheridan "would clearly be proscribed by the holding in *Lister.*" This would include Brophy's conduct during the field sobriety tests, since the purpose of the tests was to determine whether Sheridan should be arrested. Sheridan's negligence claim focuses on the police officers' conduct *after* informing Sheridan that he was under arrest.

■

Governmental immunity does not attach merely because the police officers' conduct involves discretion. "The question is whether the decision involved the type of judgment and discretion which rises to governmental discretion, as opposed to professional or technical judgment and discretion." *C.L. v. Olson,* 140 Wis. 2d 224, 231, 409 N.W.2d 156, 159 (Ct. App. 1987) (citation omitted), *aff'd,* 143 Wis. 2d 701, 422 N.W.2d 614 (1988).

Thus, in *Scarpaci v. Milwaukee County,* the court concluded that immunity attached to the decision of a medical examiner to conduct an autopsy but not to the manner in which the autopsy was performed. 96 Wis. 2d at 685-86, 292 N.W.2d at 826-27. Similarly, in *Gordon v. Milwaukee County,* 125 Wis. 2d 62, 370 N.W.2d 803 (Ct. App. 1985), the court found that while the decision whether to release a mental health detainee was quasi-judicial, negligent examination and diagnosis of him was not covered by governmental immunity. *Id.* at 67, 370 N.W.2d at 806; *see Protic v. Castle Co.,* 132 Wis. 2d 364, 370, 392 N.W.2d 119, 122 (Ct. App. 1986) ("[p]ostsurgical medical care, like psychiatric care, does not involve the sort of governmental decisionmaking which is entitled to immunity").

■

We do not believe the police officers' conduct in executing Sheridan's arrest can fairly be characterized as "non-governmental." Their decisions regarding the man-

ner in which the arrest was effectuated involved numerous applications of governing statutes and case law. They were required to determine whether Sheridan should be searched, handcuffed, subjected to force during execution of the arrest, and given a breathalyzer. These decisions involved "subjective evaluation of the law," *C.L.,* 143 Wis. 2d at 718, 422 N.W.2d at 620 (citations omitted), and are not akin to the decision-making process of a medical examiner performing an autopsy, *Scarpaci.*

Nor do we believe the police officers' conduct can be pigeon-holed into the "known present danger" exception recognized in *Cords v. Anderson,* as Sheridan would have us hold. The mere fact that Sheridan said that he had recently had neck surgery did not create a duty on the part of the police officers "so clear and so absolute that it [fell] within the definition of a ministerial duty." *Id.,* 80 Wis. 2d at 542, 259 N.W.2d at 680. We hold that Sheridan's complaint against Brophy and Johnson fails to state a claim. We also hold that, as to Brophy and Johnson's negligent conduct, the complaint also fails to state a claim against the city of Janesville.[1]

---

[1]Sheridan argues that, even assuming Brophy and Johnson are immune from liability for negligence, the city of Janesville should still be held liable for its conduct. Relying on our statement in *Maynard v. City of Madison,* 101 Wis. 2d 273, 304 N.W.2d 163 (Ct. App. 1981), that quasi-judicial acts on a municipality's part necessarily involved "essentially judicial procedures such as notice, hearing, exercise of discretion and a decision on the record," *id.* at 282, 304 N.W.2d at 168 (citations omitted), Sheridan argues that because those procedures were absent in this case, the city's conduct is not immunized.

The language relied on by Sheridan was expressly withdrawn

## IV.  THE CITY OF JANESVILLE

The complaint alleged the city of Janesville was negligent "in the inadequate training and supervision" of its officers in dealing with disabled persons. In *Salerno v. City of Racine,* 62 Wis. 2d 243, 214 N.W.2d 446 (1974), the plaintiff alleged that the city was negligent in retaining a police officer even after the officer had demonstrated "a propensity to use excessive force." *Id.* at 245–46, 214 N.W.2d at 448. Concluding that "[n]ot to file charges against a police officer is an exercise of a discretionary right by the public official involved just as much and just as clearly as would be the filing of charges," the court held that the city's failure to discharge the officer was a quasi-judicial function. *Id.* at 248–49, 214 N.W.2d at 449.

In *Wedgeworth v. Harris,* 592 F. Supp. 155 (W.D. Wis. 1984), the plaintiff, a victim of a sexual assault by a city of Madison on-duty police officer, alleged that the city had failed to properly train and supervise its police

in *Kimpton v. School Dist. of New Lisbon,* 138 Wis. 2d 226, 405 N.W.2d 740 (Ct. App. 1987), where we stated:

> [D]espite comments in *Maynard* emphasizing the "notice and hearing" aspect of quasi-judicial acts, other cases treat the term as synonymous with "discretionary," *Gordon,* 125 Wis. 2d at 66, 370 N.W.2d at 806, or "nonministerial." *Lifer,* 80 Wis. 2d at 512, 259 N.W.2d at 541–42. To the extent our language in *Maynard* suggests a contrary or different rule, we withdraw it.

*Id.* at 234 n.4, 405 N.W.2d at 744 n.4.

Section 893.80(4), Stats., specifically extends immunity to a municipality for the quasi-judicial acts of its employees. Sheridan has not alleged that the police officers' conduct was precipitated by negligent conduct on the city of Janesville's part, apart from his allegation against the city for "inadequate training and supervision," which we address *infra.*

officers. *Id.* at 160. Finding the city immune, the court stated:

> There was nothing ministerial about [the city officials'] alleged failure to pull Harris off the street, to supervise Harris properly, to train other officers in proper techniques to avoid the kind of harm which befell the plaintiff, to screen police candidates more thoroughly, or any other of the litany of deficiencies in police practice enumerated by plaintiff. All of these actions or inactions involved the exercise of discretion and judgment, and are neither ministerial nor outside of the authority of these officials.

*Id.* at 162 (citations omitted).

Like the court in *Wedgeworth,* we believe the city's training and supervision of its police officers concerning conduct during arrests of disabled persons involves governmental discretion and, consequently, Sheridan's suit against the city for negligent training and supervision is barred by the immunity doctrine.

Because Sheridan failed to state a claim against any of the defendants, the trial court properly granted summary judgment.

*By the Court.*—Judgment affirmed.

SUNDBY, J. *(dissenting).* I conclude that Sheridan states a claim against the individual police officers and against the city. Therefore, I respectfully dissent.

The state has a common-law duty to exercise reasonable care to protect from harm someone the state has taken into custody. "Jailers and other custodians owe a duty to provide reasonable protection to prisoners and patients and others in custody . . . and are held liable for failure to do so even though they themselves may take no direct action in causing the harm." Prosser and

Keeton on the Law of Torts § 132 at 1063 (5th ed. 1984) (footnotes omitted). A discretionary/ministerial acts analysis is inappropriate to this common-law duty. As to the city's liability, *see also Maynard v. City of Madison,* 101 Wis. 2d 273, 282–84, 304 N.W.2d 163, 168–69 (Ct. App. 1981). *Maynard* appears to be based on the city's assumption of a duty to a person, which it negligently performed.