Clint WILSON, Plaintiff,

v.

CITY OF MILWAUKEE, Luke O'Day, Sean Hanley, Kenneth Henning, and Erik Gulbrandson, Defendants.

No. 00–C–299.

United States District Court,
E.D. Wisconsin.

April 20, 2001.

Christopher L. Hartley, Hartley Law Office, Milwaukee, WI, for plaintiff.

Susan E. Lappen, Milwaukee City Attorney's Office, Milwaukee, WI, for defendants.

## DECISION AND ORDER

RANDA, District Judge.

This matter comes before the Court on a motion by the defendants for partial sum-

mary judgment under Rule 56(b). The allegations of the plaintiff, Clint Wilson ("Wilson"), stem from his arrest on October 8, 1998 by defendants Luke O'Day ("O'Day"), Sean Hanley ("Hanley"), Kenneth Henning ("Henning") and Erik Gulbrandson ("Gulbrandson"), all officers of the City of Milwaukee Police Department. Wilson claims to have sustained "severe physical injuries and economic loss" as a direct and proximate result of the officers' "carelessness and negligence" in arresting him. In addition, Wilson seeks relief under 42 U.S.C. § 1983 ("Section 1983"), alleging that the arresting officers used excessive force in violation of his Fourth Amendment rights. The defendants request summary judgment with respect to the negligence claim only, arguing that the decision to arrest Wilson, and the decisions that followed about how much force to use in executing his arrest, were "discretionary" for purposes of Wisconsin's governmental immunity statute. For the reasons set forth below, the Court agrees that the defendants are entitled to immunity and grants partial summary judgment in their favor.

## BACKGROUND

Wilson claims that he was walking along a sidewalk parallel to Wells Street in Milwaukee on October 8, 1998 when O'Day and Hanley attempted to stop him. Complaint, ¶ 5. According to Wilson, the officers were not in uniform. *Id.,* ¶ 6. Next,

Wilson avers that he "attempted to avoid O'Day and Hanley by walking around them and onto the street." *Id.,* ¶ 8. After this point, the parties appear to agree that the encounter became violent, although the defendants have been reluctant to commit to specific factual propositions about the incident.[1] The record does not reflect why the defendants stopped Wilson in the first instance, or why they thought it necessary to use force in apprehending him,[2] although Wilson admits to being under the influence of alcohol at the time of the incident. Deposition of Clint Wilson ("Wilson Dep."), p. 33. Wilson maintains that O'Day tackled him onto the street, "shoving [his] face in the concrete," and that Hanley *intentionally* "stomped [his] leg while [he] was on the ground." Defendant's Proposed Findings of Fact ("DPFOF"), *Facts,* ¶¶ 2–3 (quoting plaintiff's deposition testimony). It is not clear precisely what role Officers Henning and Gulbrandson played in the arrest. However, there is no dispute that all four of the individual defendants were, at the time of the incident, acting as law enforcement officers for the City of Milwaukee. *Id., Parties,* ¶ 3.

On December 3, 1999, Wilson filed suit against the defendants in the Circuit Court for Milwaukee County. Invoking Section 1983, Wilson sought damages for alleged violations of his rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution. Complaint, ¶¶ 13–15. The complaint also in-

---

1. Defendants have submitted proposed findings as part of their brief in support of partial summary judgment. The plaintiff does not object to any of these findings, which are therefore deemed admitted under Civil Local Rule 56.2 (formerly Rule 6.05). Unfortunately, these findings consist, for the most part, of non-committal statements about what the *plaintiff* has 'alleged,' "maintained," "averred," or "claimed." Likewise, although Rule 8(b) requires that an answering party "fairly meet the substance" of each averment

in a complaint, the defendants in their answer refused even to admit or deny the date of the alleged incident.

2. These matters will have to be addressed in the context of Wilson's excessive force claim. They are not, strictly speaking, relevant to the question before the Court, which is whether the defendants are shielded from negligence liability under Wisconsin law.

cluded a claim for common law negligence. *Id.*, ¶¶ 16–17. The action was removed to this Court on the basis of "federal question" jurisdiction in late February of 2000. Earlier this year, the parties stipulated to the dismissal of all claims except Wilson's negligence claim and his Section 1983 claim that the officers used excessive force in violation of his rights under the Fourth Amendment.

The defendants' motion for partial summary judgment, filed in February of this year, seeks dismissal of Wilson's negligence claim on the basis that it is barred by Section 893.80(4) of the Wisconsin Statutes. The defendants concede that a jury must resolve "questions regarding significant fact[s]" relating to Wilson's federal constitutional claim. Defendant's Brief, p. 2. A jury trial is scheduled to commence May 29, 2001.

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment[3] should be entered when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corporation v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party

is entitled to summary judgment if, based on the evidence in the record, no reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A party must present more than mere speculation or conjecture to defeat a summary judgment motion." *Sybron Transition Corp. v. Security Ins. Co.,* 107 F.3d 1250, 1255 (7th Cir.1997).

Subsection (b) of Rule 56 authorizes a defending party to seek partial summary judgment, as the defendants have done in this case. Motions for summary judgment, including those that seek partial relief, should not be regarded as "disfavored procedural shortcut[s]." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548. Rather, they are "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Id.*

### II. *Governmental Immunity Under Section 893.80(4)*

Defendants maintain that the discretionary actions of Officers O'Day, Hanley, Henning and Gulbrandson in arresting Wilson cannot give rise to liability for negligence because such actions are protected by the governmental immunity conferred by Section 893.80(4).[4] The statute relied

---

**3.** The issue of the defendants' immunity comes before the Court on a motion for partial summary judgment, although it could perhaps have been raised earlier by way of a motion to dismiss. *Lister v. Board of Regents,* 72 Wis.2d 282, 240 N.W.2d 610, 621 (1976) ("The objection of an officer's civil immunity, affecting as it does his substantive liability for damages, is properly presented by a demurrer on the ground that the complaint fails to state a cause of action.").

**4.** Unfortunately, the plaintiff has briefed a different issue altogether, *i.e.,* whether the

doctrine of qualified immunity bars his Fourth Amendment claim. Opp. Brief, p. 5. The doctrine of qualified immunity provides that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Baxter v. Vigo County School Corp.,* 26 F.3d 728, 737 (7th Cir.1994) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The defendants do not seek dis-

upon by the defendants provides, in relevant part:

No suit may be brought against any . . . political corporation, governmental subdivision or any agency thereof . . . or against any of its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

W.S.A. § 893.80(4).

■ Under Section 893.80(4), which derives from the common law, "[p]ublic officers or employees"—as well as the governmental entities that employ them—"enjoy immunity from liability for injuries resulting from the performance of any discretionary act within the scope of their governmental employment." *Kierstyn v. Racine Unified School Dist.*, 228 Wis.2d 81, 596 N.W.2d 417, 421–22 (1999). Governmental immunity aims to strike a balance between "the need of public officers to perform their functions freely [and] the right of an aggrieved party to seek redress." *Id.* (quotation omitted). The policy considerations underlying governmental immunity "focus largely on the protection of the public purse against legal action and on the restraint of public officials through political rather than judicial means." *Id.*

■ In the case law defining the parameters of governmental immunity, a "discretionary" act is distinguished from an act that is purely "ministerial." While ministerial acts can give rise to liability, discretionary acts generally enjoy immunity. *Ottinger v. Pinel*, 215 Wis.2d 266, 572 N.W.2d 519, 522 (App.1997). A discretionary act involves the "exercise of judgment in the application of a rule to specific facts." *Willow Creek Ranch, LLC v. Town of Shelby*, 235 Wis.2d 409, 611 N.W.2d 693, 700 (2000). A ministerial act, by contrast, involves a duty that is:

absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.

*Id.* (quoting *C.L. v. Olson*, 143 Wis.2d 701, 422 N.W.2d 614, 619 (1988)). In assessing whether an act is discretionary or ministerial, "it is the nature of the specific act upon which liability is based, as opposed to the categorization of the general duties of [the] public officer, [that] is determinative of whether [the] officer is immune from liability." *Olson*, 422 N.W.2d at 619.[5]

■ The Court concludes that decisions by law enforcement officers concerning whether and how to arrest someone are discretionary for purposes of Section 893.80(4). Clearly, such decisions call for "the exercise of judgment or discretion rather than the mere performance of a prescribed task." *Spencer v. Brown County*, 215 Wis.2d 641, 573 N.W.2d 222, 226–27 (App.1997). Indeed, the plaintiff concedes that "[a]n officer's decision to use force to effect an arrest, and the officer's determination of the amount of force necessary to effect an arrest, are solely within the officer's discretion." DPFOF, *Facts*, ¶ 11.[6] The plaintiff also admits that such decisions depend on myriad factors which

missal of the plaintiff's constitutional claim, nor do they invoke qualified immunity.

**5.** The preceding overview is indebted to Judge Fine's decision· in *Rolland v. County of Milwaukee*, 241 Wis.2d 215, 625 N.W.2d 598 (App.2000). For a discussion of the policy considerations underlying governmental immunity, the reader is referred to the decisions of the Wisconsin Supreme Court in *Kierstyn, supra,* and *Lister, supra.*

**6.** See n. 1 *supra.*

vary from case to case. *Id.* Of course, the procedures for making an arrest, including the degree of force used, are governed by the Fourth Amendment and in some cases by municipal or departmental guidelines. However, these procedures are by no means "absolute, certain and imperative, involving merely the performance of a specific task prescribed by the law such that nothing remains for judgment or discretion." *Ottinger*, 572 N.W.2d at 522. Rather, as we know from the abundant case law dealing with this issue in the Fourth Amendment context, the appropriate manner of securing an arrest depends on all of the "surrounding circumstances." *Phillips v. City of Milwaukee*, 928 F.Supp. 817, 829 (E.D.Wis.1996), *aff'd*, 123 F.3d 586 (7th Cir.1997). These circumstances "include, but are not limited to, the crime's severity, whether the suspect poses an immediate threat to the officers or to others, and whether the suspect is resisting arrest or is fleeing arrest." *Id.* The consideration of such factors—often in situations that are "tense, uncertain, and rapidly evolving"—can hardly be described as "ministerial." *Id.*

The Court is guided in its disposition of the instant motion by the majority opinion in *Sheridan v. City of Janesville*, 164 Wis.2d 420, 474 N.W.2d 799 (App.1991), which is, as far as the Court can determine, the only reported state court decision directly on point. In *Sheridan*, the plaintiff sued two police officers and their municipal employer, claiming that he sustained injuries caused by the officers' negligence during his arrest for drunk driving.

The trial court determined that Section 893.80(4) shielded the officers from negligence liability. The Court of Appeals affirmed, noting first that "a claim that the police officers were negligent in *deciding* whether or not to arrest [the plaintiff]" would be shielded by governmental immunity because the decision to arrest "clearly" involved discretion. *Id.*, 474 N.W.2d at 802 (emphasis added). The *Sheridan* majority reached a similar conclusion with respect to the officers' conduct in *executing* the arrest. The majority rejected the argument that the officers had exercised only "professional or technical" discretion, not "governmental" discretion, following the initial decision to arrest the plaintiff. *Id.*[7] In determining that the officers' conduct in executing the arrest was discretionary, the majority noted:

[The officers'] decisions regarding the manner in which the arrest was effectuated involved numerous applications of governing statutes and case law. They were required to determine whether [the plaintiff] should be searched, handcuffed, subjected to force during the execution of the arrest, and given a breathalyzer These decisions involved subjective evaluation of the law.

474 N.W.2d at 802 (quotation omitted).

■ The federal courts have consistently followed *Sheridan* in addressing claims of statutory immunity for arresting officers under Section 893.80(4). Relying upon *Sheridan*, the Seventh Circuit in *Phillips, supra*, unequivocally held that

---

**7.** The distinction between "governmental" and "professional" discretion stems from *Scarpaci v. Milwaukee County*, 96 Wis.2d 663, 292 N.W.2d 816 (1980), in which the Wisconsin Supreme Court held that a county medical examiner was not entitled to immunity for negligent performance of an autopsy. Since *Scarpaci*, the "professional discretion" exception has only been recognized on two other occasions, both occurring in the medical context. *Kierstyn*, 596 N.W.2d at 425. In recent years, the Supreme Court has warned against further expansion of its holding in *Scarpaci*. *Id.* Indeed, it recently described the "professional discretion exception" as the "medical discretion exception" or "*Scarpaci* rule," further suggesting its limited application. *Willow Creek*, 611 N.W.2d at 700.

"whether and how to arrest an individual involve discretion." 123 F.3d at 599.[8] Judge Adelman recently relied upon *Sheridan* for the very same conclusion in *Johnson v. City of Milwaukee,* 41 F.Supp.2d 917, 931 (E.D.Wis.1999). In addition to *Sheridan,* which speaks directly to the discretionary nature of decisions relating to arrest, this Court takes note of appellate decisions from Wisconsin that characterize closely analogous decisions as "discretionary," including the decision by a police officer to initiate or continue a high-speed chase, *Cavanaugh v. Andrade,* 202 Wis.2d 290, 550 N.W.2d 103, (1996), and decisions by corrections officers regarding how much force is necessary to prevent a prison escape. *Ottinger,* 572 N.W.2d at 522.

■ The recent case of *Lewis v. St. Petersburg,* 98 F.Supp.2d 1344 (M.D.Fla. 2000), articulates well the reasons we ought to consider "discretionary" the decisions that officers in the field must make about the degree of force necessary to effect an arrest. In *Lewis,* Chief Judge Kovachevich, of the Middle District of Florida, addressed the question of whether a municipal police officer's decision to use deadly force was "discretionary" under Florida's version of governmental immunity.[9] He wrote:

> The decision ... to use deadly force ... is exactly the type of discretionary function which is protected by governmental immunity. On a daily basis, law enforcement officers encounter situations that require split-second decisions to be made. A decision concerning whether to use deadly force is one of those split-second decisions that must be made. A law enforcement officer's decision to use deadly force ... is a discretionary decision that lies at the very heart of an officer's ability to protect all members of a society, including himself and other officers.

*Id.* at 1351; *see also Phillips,* 928 F.Supp. at 829. This Court agrees wholeheartedly with Judge Kovachevich that decisions about how much force to use in effecting an arrest are quintessentially discretionary.

■ Lastly, although the issue has not been briefed by either the plaintiff or the defendants, the Court will consider whether this case falls within any of the four recognized exceptions to governmental immunity. *Willow Creek,* 611 N.W.2d at 700. Immunity does not apply to the performance of "(1) ministerial duties; (2) duties to address a 'known danger;' (3) actions involving medical discretion (the *Scarpaci* rule); and (4) actions that are malicious, willful *and* intentional." *Id.* (emphasis added). The first three exceptions have no application in this case, nor does the fourth, absent any evidence that the officers acted with malice.

■ The exception for "malicious, willful and intentional conduct" is obviously a narrow one. Giving broad scope to the exception would undermine the important public policy considerations that support governmental immunity, including the need to assure those entering public service that

---

**8.** Making an arrest is also considered a "discretionary function" for purposes of the federal doctrine of qualified immunity. *Payton v. Rush–Presbyterian–St. Luke's Medical Center,* 184 F.3d 623, 630 (7th Cir.1999).

**9.** Florida law authorizes certain tort claims against the State and its political subdivisions. A judicially-created exception, functionally similar to Wisconsin's Section 893.80(4), immunizes "discretionary governmental functions" from tort liability. The exception stems from a recognition that allowing courts to second-guess truly discretionary governmental decisions would be inconsistent with the separation of powers doctrine. *Id.* at 1348.

they will only incur liability for truly egregious acts in the performance of their discretionary governmental functions. *Kierstyn,* 596 N.W.2d at 422. It is significant that the exception only exists for acts that are malicious, in addition to being willful and intentional. "Malice" in the legal sense connotes "wrongful intention," as in "[t]he intent, *without justification or excuse,* to commit a wrongful act." BLACK's LAW DICTIONARY (7th Ed.1999) 968 (emphasis added). "Reckless disregard of the law or of a person's legal rights" can also constitute malice. *Id.* Lastly, malice can mean "ill will" or "wickedness of heart." *Id.*

Although Wilson claims that Officer Hanley *intentionally* stomped on his leg and he seeks punitive damages on the basis of the defendants' allegedly "willful, outrageous and wanton conduct," Complaint, p. 4, his state cause of action is for *negligence,* not reckless or malicious infliction of emotional distress, false arrest or false imprisonment. Moreover, the meager summary judgment record before this Court will not support the conclusion that the officers acted with malice. Indeed, not even the plaintiff's proposed factual findings would permit a reasonable inference that the officers behaved with a wrongful intention, or with reckless disregard for Wilson's rights, or that they were motivated by ill will. Opp. Brief, pp. 1–2 (Proposed Findings of Fact). At worst, the plaintiff's version of events has the officers using some rough language and engaging in what *could* be characterized as "excessive force" in the course of an otherwise admittedly lawful arrest. Wilson Dep., p. 32.

To summarize, this Court agrees with the Wisconsin Court of Appeals in *Sheridan,* the Seventh Circuit in *Phillips,* and

Judge Adelman in *Johnson* that decisions concerning whether *and* how to arrest an individual are discretionary for purposes of Section 893.80(4). As such, they cannot give rise to negligence liability under Wisconsin law. This case does not fall within any of the recognized exceptions to governmental immunity. Accordingly, the defendants are entitled to partial summary judgment dismissing Wilson's negligence claim.[10]

NOW THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion to enlarge time to file response to defendants' motion for summary judgment is GRANTED; and

2. Defendants' motion for partial summary judgment is GRANTED and the plaintiff's cause of action for negligence is dismissed.

---

10. In light of this conclusion, the Court need not reach the argument, set forth in Section B

of the defendants' brief, that Wilson has failed to state a claim for negligence.