George JOHNSON and Cecil Johnson, Plaintiffs-Appellants,

v.

CITY OF EDGERTON, a Municipal Corporation, Defendant-Respondent.

Court of Appeals

*No. 96–0894. Submitted on briefs November 12, 1996.—Decided December 5, 1996.*

(Also reported in 558 N.W.2d 653.)

For the plaintiffs-appellants the cause was submitted on the briefs of *Randall R. Garczynski* of *Garczynski & Brennan Law Offices, S.C.,* of Elkhorn.

For the defendant-respondent the cause was submitted on the brief of *Ronald J. Kotnik* and *Peter A. Martin* of *Lathrop & Clark* of Madison.

Before Eich, C.J., Dykman, P.J., and Deininger, J.

EICH, C.J. George and Cecil Johnson appeal from a summary judgment dismissing their action against the City of Edgerton. They sued the City for injunctive relief and damages when they were unable to gain access to their property from the unimproved "stub-end" of a city street. The trial court dismissed the action, concluding that the City was immune from suit under the "governmental immunity" provisions of § 893.80(4), STATS.,[1] for its refusal to open the street to the Johnsons' lot line.

The issues are: (1) whether the immunity granted by § 893.80(4), STATS., is limited to actions in tort, or whether it extends to equitable actions seeking injunctive relief; and (2) whether the City is immune from the Johnsons' claims on the facts of this case. We answer both questions in the affirmative and affirm the judgment.

The basic facts are not in dispute. The Johnsons acquired the property in 1993. It was one of three lots contained in a plat in the Town of Albion abutting the border between the town and the City of Edgerton. The plat was first laid out in a Certified Survey Map filed by

---

[1] Section 893.80(4), STATS., which we discuss in more detail below, has been held to render governmental subdivisions and their officers immune from suit for their "discretionary," as opposed to "ministerial," actions.

the developer in 1963 and approved by Dane County and, because it was within the City's extraterritorial plat-approval jurisdiction, by the City as well. The Johnsons' lot, known as Lot 3, runs along the city/town border and abuts what the parties call the "stub-end" of Sweeney Road, a dedicated, but partially unopened, city street. While the road is shown on City plats as ending at the town line, the last block—between the last street in the City and the town line—is wholly unimproved and has never been opened for travel. This stub-end is no more than a grassy lot that, while located in the City, abuts the Johnsons' property in the Town of Albion.

After the Johnsons purchased Lot 3, obtained a construction permit from the town and began construction of a home, they asked the City's public works director, Stan Strandlie, for permission to use the unopened stub-end of Sweeney Road for construction access to the lot. Strandlie granted the request, limiting it to a period of thirty days commencing November 17, 1993, and advised the Johnsons that in order to acquire permanent access, they would need permission from the City Council and Plan Commission.

When the access permit expired, Strandlie extended the temporary-use period for an additional thirty days to enable the Johnsons to complete construction of their home and formally request the City to improve and open Sweeney Road to the town line. They had, in the meantime, received a driveway permit from the Town of Albion, allowing them access to their property from an adjoining town road.

Instead, the Johnsons served a "Notice of Injury" on the City pursuant to § 893.80(1)(a), STATS., as a

precursor to bringing this lawsuit.[2] The notice stated that the City's actions in restricting access to their lot over the stub-end of Sweeney Road injured them financially, physically and emotionally.

Shortly thereafter, the Johnsons applied to the City to open Sweeney Road to the town line, and the Plan Commission and City Council denied the application. The Johnsons commenced this action approximately one year later, alleging, among other things, that the City should be estopped from refusing to open the stub-end of the road because such actions were contrary to the City's "public representations." Alleging that the City's actions irreparably harmed them, they sought an injunction requiring the City to open the road to their property. Their complaint also stated a claim seeking both compensatory and punitive damages for the City's negligence in "denying [them] access" to the road. They appeal the judgment dismissing their action.

## I. Application of § 893.80(4) to "Equitable" Actions

Consideration of the parties' positions will be aided, we think, by a preliminary reference to the statute as a whole. Section 893.80(1), STATS., provides generally that, with exceptions not pertinent here, no action may be brought against a governmental subdivision for "acts done in [its] official capacity" unless the plaintiff has first, within 120 days of the event giving rise to the claim: (a) served a notice of the "circumstances of the claim" on the subdivision; and (b)

---

[2] As we also discuss in greater detail below, § 893.80(1), STATS., conditions suits against governmental subdivisions and their employees on prior service of a notice and claim on the municipality, and the municipality's denial of the claim.

presented a specific claim to the subdivision, and the claim has been denied. Section 893.80(4) (subsections (2) and (3) contain special provisions not pertinent here) bars "any suit" against a governmental subdivision "for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions"—functions which, as we noted, *supra* note 1, the cases describe as "discretionary" in nature.

The Johnsons argue that the immunity provided by § 893.80(4), STATS., is limited to actions in tort seeking money damages, and does not apply to actions seeking "equitable" or injunctive relief. In so arguing, they place principal reliance on two cases, *Nicolet v. Village of Fox Point*, 177 Wis. 2d 80, 501 N.W.2d 842 (Ct. App. 1993), and *Harkness v. Palmyra-Eagle School District*, 157 Wis. 2d 567, 460 N.W.2d 769 (Ct. App. 1990).[3]

In *Nicolet*, we considered the notice and claim requirements of § 893.80(1), STATS., and, relying in large part on the legislative history of the statute as a whole, we held that those requirements applied only to actions in tort. We reached a similar conclusion in *Harkness*—based largely on the same legislative history—with respect to the immunity provisions of § 893.80(4), holding that they, too, applied only to tort actions. The question before us, however, is not so much what *Nicolet* and *Harkness* say, but whether they have been eviscerated, if not eradicated, by the supreme court's more recent decision in *DNR v. City of Waukesha*, 184 Wis. 2d 178, 515 N.W.2d 888 (1994).

Like *Nicolet*, *DNR* concerned the notice and claim provisions of § 893.80(1), STATS. The Department of

---

[3] Both *Nicolet* and *Harkness* were overruled, at least in part, by *DNR v. City of Waukesha*, 184 Wis. 2d 178, 515 N.W.2d 888 (1994). *See infra* discussion.

Natural Resources sued the City of Waukesha Water Utility, seeking not only penalties and forfeitures but an injunction requiring the utility to bring its water supply system in compliance with state regulations. *DNR*, 184 Wis. 2d at 186-87, 515 N.W.2d at 891. The utility moved to dismiss on grounds that the department failed to serve the notice of the circumstances of its claim required by § 893.80(1), as a condition precedent to the lawsuit. The court upheld the trial court's dismissal of the action, holding that "the notice of claim statute, sec. 893.80(1), STATS., applies in all actions, not just in tort actions." *Id.* at 183, 515 N.W.2d at 890, and overruled both *Harkness* and *Nicolet* to the extent they held to the contrary. *Id.* at 191, 515 N.W.2d at 893.

The Johnsons, pointing out that the *DNR* court was concerned only with the notice and claim provisions of § 893.80(1), STATS., not with § 893.80(4), maintain that the decision is precedentially binding only as to subsection (1). Given the court's analysis, however, we question whether the decision may be so limited.

The *DNR* court began by discussing the statute's history, noting in particular that, as created in 1963,[4] its opening line stated, "No action *founded on tort . . .* shall be maintained against any . . . governmental subdivision" absent compliance with the statutory notice and claim provisions. Then, noting that the legislature subsequently amended the statute to delete the "founded on tort" language, the court concluded the "plain language" of the statute as it exists today "clearly does not limit the application of the notice of

---

[4] The statute was created as § 331.43, STATS., 1963, by Laws of 1963, ch. 198.

claim requirements to tort claims." *DNR*, 184 Wis. 2d at 190, 515 N.W.2d at 892.

The *DNR* court continued by referring to its opinion in *Figgs v. City of Milwaukee*, 121 Wis. 2d 44, 52, 357 N.W.2d 548, 553 (1984)—where, considering the notice and claim provisions of § 893.80(1), STATS., it concluded—again, largely on the basis of the statute's legislative history—that "sec. 893.80" was not limited to tort claims and criticized our decision in *Nicolet* in which, as indicated, we reached the opposite conclusion.

> In *Nicolet*, the court of appeals characterized this court's conclusion in *Figgs* regarding the universal applicability of sec. 893.80(1), STATS., as dicta that the court need not follow. Regardless of whether our conclusion in *Figgs* was dicta, it was the correct conclusion. The language of the statute clearly and unambiguously makes the notice of claim requirements applicable to all actions. The legislature's decision to remove the language limiting the statute to tort claims reinforces this conclusion. Thus we now hold that sec. 893.80 applies to all causes of action, not just those in tort and not just those for money damages.

*DNR*, 184 Wis. 2d at 191, 515 N.W.2d at 893 (citations omitted). The court then overruled *Nicolet, Harkness*, and another similar case, "to the extent [they] . . . hold that sec. 893.80(1) applies only to tort claims and claims for money damages." *Id.*

In our opinion, while the supreme court's decision in *DNR* was limited to § 893.80(1), STATS., its reasoning compels a similar conclusion with respect to § 893.80(4). We think so for three reasons. First, in *Figgs*—and especially in *DNR*—the supreme court found significant, if not controlling, the absence of a

specific limitation to tort claims in § 893.80(1). The same may be said for the "immunity" provisions of subsection (4); they do not now contain—nor have they ever contained—any such limitation. The subsection states, simply and plainly, that acts done in the exercise of the subdivision's discretionary functions are immune from "any suit."

Second, the immunity from *any* suit language of § 893.80(4), STATS., significant in itself, becomes even more so when considered in context. Subsection (4) makes two points. It says first that "[n]o suit . . . for . . . *intentional torts*" of a government agency or employee in the course of government activity may be commenced under any circumstances. (Emphasis added.) It then states: "Nor may *any suit* be brought" against a government agency or employee "for acts done" in the exercise of quasi-legislative or judicial functions. (Emphasis added.) Not only is there, as we have just noted, no limiting language here, but in the preceding clause of the same subsection, the legislature made a specific reference to actions for intentional torts. We presume, of course, "that the legislature chose its terms carefully and precisely to express its meaning." *Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 539, 345 N.W.2d 389, 394 (1984). When the legislature uses different terms in a statute—particularly in the same section—we presume it intended the terms to have distinct meanings. *American Motorists Ins. Co. v. R & S Meats, Inc.*, 190 Wis. 2d 196, 214, 526 N.W.2d 791, 798 (Ct. App. 1994). We do not believe it would be reasonable to read a "torts-only" limitation into the "any suit" language of § 893.80(4). We think that to do so would

351

run hard into the supreme court's reasoning in *DNR*, as well as the language of the statute itself.

Finally, we note that the immunity provisions of § 893.80(4), STATS., derive from considerations of public policy. They are designed to "protect public officers from being unduly hampered or intimidated in the discharge of their functions by threat of lawsuit or personal liability," *Scarpaci v. Milwaukee County*, 96 Wis. 2d 663, 682, 292 N.W.2d 816, 825 (1980), and, more generally, to " 'ensure that courts will refuse to pass judgment on the policy decisions made by coordinate branches of government.' " *Hillman v. Columbia County*, 164 Wis. 2d 376, 397, 474 N.W.2d 913, 921 (Ct. App. 1991) (quoted source omitted). A related consideration is, of course, "the drain on valuable time" of public agencies and officials that can be "caused by such actions." *Lister v. Board of Regents*, 72 Wis. 2d 282, 299, 240 N.W.2d 610, 621 (1976). These considerations apply just as earnestly to an equitable action seeking injunctive relief against the agency or the official as they do to one for the recovery of money.

■

We conclude, therefore, that the official immunity provisions of § 893.80(4), STATS., like the notice and claim provisions of § 893.80(1), are not limited to tort or money-damage actions, but are equally applicable to actions which, like the Johnsons', seek injunctive relief against the governmental subdivision or employee.[5]

---

[5] In so deciding, we are aware that we based our holdings in *Nicolet* and *Harkness* largely on the fact that § 893.80, STATS., was created in response to the supreme court's decision in *Holytz v. Milwaukee*, 17 Wis. 2d 26, 115 N.W.2d 618 (1962), abolishing the doctrine of municipal *tort* immunity in Wisconsin, and suggesting that the legislature could, if it desired, regulate the form and manner in which such suits could

## II. Application of the Immunity Rule

We next consider whether, on this record, the City is immune under § 893.80(4), STATS.

██

As we noted above, the statute prohibits actions against public agencies or employees for "acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions." The quoted terms have been recognized as synonymous with "discretionary acts"—acts involving the exercise of discretion and judgment. *Sheridan v. City of Janesville*, 164 Wis. 2d 420, 425, 474 N.W.2d 799, 801 (Ct. App. 1991). A nonimmune "ministerial" act, on the other hand, is one where the duty is " 'absolute, certain and imperative, involving merely the performance of a specific task . . . and the time, mode and occasion for its performance [are defined] with such certainty that nothing remains for [the exercise of] judgment or discretion.' " *Id.* (quoted source omitted).

The Johnsons argue first that once the City decided to join in the approval of the Certified Survey Map of the Town of Albion plat in 1978, any and all further acts on the City's part—including, we presume, the primary act of which they complain: the City's refusal to open Sweeney Road—were purely ministerial in nature. The argument, which is unsupported by citations to any legal authority for the propositions advanced, is unpersuasive. *See Phillips v.*

be brought. *Id.* at 41, 115 N.W.2d at 625-26. The supreme court was not unaware of its decision in *Holytz* when it decided *DNR*, where, as we pointed out, it elected to rely instead on the "plain language" of § 893.80(1)—and the absence of any express torts-only restriction—to reach a result entirely contrary to *Nicolet* and *Harkness*, and indeed to overrule both cases on the issue.

*Wisconsin Personnel Comm'n,* 167 Wis. 2d 205, 228, 482 N.W.2d 121, 130 (Ct. App. 1992) (court of appeals does not consider arguments unsupported by references to legal authority).

Next, the Johnsons liken the City's actions to those involved in the approval and rejection of plats, which, they contend, are "ministerial" acts as a matter of law. They base their argument on two plat-rejection cases, *Greenlawn Memorial Park v. Neenah Town Board,* 270 Wis. 378, 71 N.W.2d 403 (1955), and *State ex rel. Columbia Corp. v. Town Board,* 92 Wis. 2d 767, 286 N.W.2d 130 (Ct. App. 1979), where this court and the supreme court used the term "ministerial" to describe the municipality's actions in disapproving a cemetery and a land development plat. Both cases arose in entirely different contexts, however, and neither deals in any way with considerations of governmental immunity under § 893.80(4), STATS., or with the "discretionary/ministerial" distinctions found in the body of law that has built up around the statute since its enactment in 1963.[6]

---

[6] In *Greenlawn Memorial Park v. Neenah Town Board,* 270 Wis. 378, 71 N.W.2d 403 (1955), which was decided prior to the creation of § 893.80(4), STATS., the supreme court held that, once a town board has determined that it has no objections to a cemetery plat, mandamus will lie to force approval of the plat because, under the applicable statutes, once the predicate findings have been made, the board has no discretion and approval is required. *Id.* at 385, 71 N.W.2d at 407-08. It was in that context that the court described the act of plat approval as "ministerial" in the sense that it could be enforced through mandamus. *Id.*

*State ex rel. Columbia Corp. v. Town Board,* 92 Wis. 2d 767, 286 N.W.2d 130 (Ct. App. 1979), was a certiorari review of a town's denial of a plat where the town board argued it had the authority under the plat-approval statutes, § 236.13(1)(b)

Both of the Johnsons' claims against the City—for "equitable estoppel" and for negligence—are based on allegations that the City improperly denied them access to Lot 3, and they seek not only compensatory and punitive damages for that denial, but also an injunction requiring the City to construct and open Sweeney Road to their property.[7]

through (e), STATS., to impose as requirements its own interpretations of the chapter's broad promotion-of-health-and-welfare statement of purpose outlined in § 236.01. We held that the broad "preamble to the chapter" conferred no authority on local units of government to reject plats. *Id.* at 779, 286 N.W.2d at 136. Then, noting that the town disagreed with that interpretation, objecting that it would "render[ ] its role in reviewing plats 'purely ministerial,' " we said we believed that was a "fair characterization" of the town's role under the plat-review statutes. We stated that under the platting statutes, a town is not free " 'to make up requirements for each new plat submitted,' " but must "develop and announce" general standards for acceptance and apply those standards on a case-by-case basis. *Id.* at 780-81, 286 N.W.2d at 136-37 (quoted source omitted). That was the sense and context in which the term "ministerial" was used in *Columbia Corp.*

Neither case is at all instructive—much less compelling—on the issues before us.

[7] In their estoppel claim, the Johnsons allege that the City made certain undescribed "representations" regarding the town plat in which their lot was located, that they relied on those representations and, "contrary to [its] public representations . . . [the City] denied plaintiff[s] access to Lot 3 over Sweeney Road," causing them irreparable harm. They sought relief in the form of "compensatory damages . . . and injunctive relief requiring the . . . City . . . to open, improve and maintain Sweeney Road so as to provide . . . ingress and egress to plaintiff[s'] Lot 3."

The Johnsons' negligence claim alleged that they were injured "as a direct and proximate result of [the City]'s negligent act in denying access to Lot 3."

■ As the City correctly points out, the standard applicable to opening streets is one of public convenience and necessity. *See* 10A EUGENE MC-QUILLAN, THE LAW OF MUNICIPAL CORPORATIONS § 30.31, at 274-75 (3d ed. 1990). In our opinion, such a determination necessarily involves the exercise of discretion. For example, in *Jefferson v. Eiffler*, 16 Wis. 2d 123, 132, 113 N.W.2d 834, 839 (1962), we stated:

> The common council is the judge of the public necessity for opening up its streets . . . and as to whether any public convenience or use will be subserved thereby. The public use is the dominant interest and the public authorities are the exclusive judges when and to what extent the street shall be improved.

(Footnote omitted.)

That is the type of "discretionary" action—as that term is discussed above—to which immunity attaches under § 893.80(4), STATS.[8]

■ We conclude, therefore, that the trial court properly dismissed the Johnsons' complaint.

---

[8] To the extent either of the Johnsons' claims may be said to challenge the City's grant or denial of temporary use of the stub-end of Sweeney Road, we feel the same considerations apply. The City points out, for example, that its ordinances are silent as to the issuance of temporary-use permits for access over dedicated, but unopened, streets. And we think it goes without saying that to the extent any City official had the inherent authority to permit—or deny—such temporary use, such authority was plainly discretionary within the meaning of § 893.80(4), STATS., and the cases decided thereunder.