Jeff S. SCHMELING, Ann M. Schmeling, and Robert McGinnity, Plaintiffs-Respondents,

v.

Richard J. PHELPS , Dane County Executive, Dane County Board of Supervisors and Dane County, a political subdivision of the State of Wisconsin, Defendants-Appellants.

Court of Appeals

*No. 96–2661. Submitted on briefs June 6, 1997.—Decided August 14, 1997.*

(Also reported in 569 N.W.2d 784.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Kristi A. Gullen,* assistant corporation counsel for Dane County, with whom on the briefs was *Cal W. Kornstedt,* corporation counsel.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Bruce K. Kaufmann* of *Boushea, Segall & Joanis* of Monona.

Before Dykman, P.J., Vergeront and Deininger, JJ.

DEININGER, J. Dane County Executive, Richard Phelps,[1] appeals a judgment declaring invalid his veto of a petition to rezone a parcel of real estate owned by Robert McGinnity after the petition had been approved by the Dane County Board of Supervisors. Phelps claims that the trial court erred in granting

---

[1] The notice of appeal lists Phelps, the Dane County Board of Supervisors and Dane County as appellants. Since only Phelps's action as Dane County Executive is at issue in this appeal, we will refer to appellants collectively as "Phelps." Kathleen Falk succeeded Phelps as Dane County Executive in April, 1997.

judgment to McGinnity and not to him because: (1) his veto is a discretionary act for which he is immune from suit under § 893.80(4), STATS.; (2) his veto authority is a constitutionally based power entitled to deference from the judiciary; (3) the trial court based its decision on evidence not properly before it; and (4) the veto of the rezoning petition was rationally related to a legitimate governmental objective. McGinnity disputes these claims and argues in addition that Phelps lacks authority to veto rezoning petitions, and alternatively, that Phelps's veto of his petition was based on improper considerations and was arbitrary and capricious. We conclude that a county executive's authority under Article IV, section 23a of the Wisconsin Constitution,[2] to veto "resolutions or ordinances" passed by the county board, extends to rezoning petitions, which are in essence proposed amendments to a county zoning ordinance. We further conclude that the executive's action in vetoing a rezoning petition is a legislative act, subject to court review in the same manner and according to the same standard as a county board's failure to approve a petition to rezone a specific parcel. Finally, we conclude that the trial court erred in invalidating the veto on the record before it. Accordingly, we reverse the declaratory judgment and direct that judgment be entered dismissing McGinnity's complaint.

---

[2] Article IV, section 23a of the Wisconsin Constitution provides in relevant part as follows:

> Every resolution or ordinance passed by the county board in any county shall, before it becomes effective, be presented to the chief executive officer. If he approves, he shall sign it; if not, he shall return it with his objections . . . .

## BACKGROUND

McGinnity owns and resides on an 8.4 acre parcel of land in the Town of Albion which was surveyed from a larger farm parcel and rezoned from Exclusive Agriculture to the "RH [Rural Homes]–3" classification in 1987. The minimum lot area for a residence in RH–3 is eight acres. In 1993, he petitioned the county to divide the parcel into two lots, one with RH–1 classification and the other with RH–2, in order to allow Ann and Jeff Schmeling, his daughter and son-in-law, to construct a residence adjoining his. The minimum lot size for a residence is two acres in the RH–1 district and four acres in RH–2.

Staff of the Dane County Regional Planning Commission commented negatively on the petition, stating that it conflicted with "the adopted policy on density in Albion" and that a major purpose "of the density policy is to prevent successive divisions of land over time." The Town of Albion Planning Commission and town board approved the petition, however, as did the Dane County Zoning and Natural Resources Committee. The petition was approved by the Dane County Board of Supervisors on October 21, 1993, by a vote of twenty to sixteen. On November 3, 1993, Phelps vetoed McGinnity's petition, along with two other rezoning petitions, stating that the petitions violated "adopted Town Plans and the County's adopted Farmland Preservation Plan" with respect to "density and development standards." An attempt to override the veto failed.

McGinnity and the Schmelings (collectively, "McGinnity") then commenced this action seeking a judgment declaring Phelps's veto invalid and reinstating the county board's approval of the petition. Phelps moved for summary judgment of dismissal.

After considering initial briefs and oral arguments from the parties, the trial court requested McGinnity to file supplemental materials to substantiate an allegation that Phelps had failed to veto similar rezoning petitions. At the continued motion hearing, Phelps objected to the court's consideration of the unverified, non-certified copies of other zoning petitions submitted by McGinnity. The objection was also grounded on the lack of "explanation as to how these other petitions for rezone related or compared to the parcel at issue."

The trial court overruled the objection, stating that it was the "court's fault" since it had requested the information. The court did offer to adjourn the proceeding to allow McGinnity to have the documents certified. Phelps declined and instead renewed his argument that the other petitions were "meaningless" because there was no showing of similarity between them and the petition at issue. After reviewing the additional materials and hearing further argument, the trial court concluded that "the County Exec has done a legislative type of procedure in this kind of action, and I don't think that he has the power to do so. I also would find that it's arbitrary and capricious." On June 24, 1996, the court entered an order granting "Plaintiff's motion for summary judgment,"[3] and a judgment declaring the veto invalid and reinstating the county board's approval of the rezoning petition. McGinnity served and filed a notice of entry of the judgment on June 25, 1996.

[3] The record on appeal contains a summary judgment motion from Phelps but not from McGinnity. Regardless, a trial court may grant summary judgment in favor of a party opposing a summary judgment motion filed by another party. Section 802.08(6), STATS.

904

The trial court, on August 26, 1996, denied Phelps's motion for reconsideration without further hearing, and Phelps filed a notice of appeal on September 9, 1996. McGinnity moved to dismiss the appeal on jurisdictional grounds, arguing that the time for commencing the appeal ended on August 8, 1996, forty-five days following entry of judgment. *See* § 808.04(1), STATS. McGinnity argued, correctly, that § 805.17(3), STATS.,[4] only extends the time for commencing an appeal from a bench trial, not from a summary judgment. *Continental Cas. Co. v. Milwaukee Metro. Sewerage Dist.*, 175 Wis. 2d 527, 499 N.W.2d 282 (Ct. App. 1993). We denied the motion to dismiss, however, concluding that when the trial court considered the supplemental materials submitted by McGinnity, it went beyond summary judgment methodology and engaged in fact-finding. *See Schessler v. Schessler*, 179 Wis. 2d 781, 785, 508 N.W.2d 65, 67 (Ct. App. 1993) (when court engages in fact-finding, § 805.17(3), applies to extend the time to appeal).

## ANALYSIS

*a. Standard of Review*

■ The preliminary inquiries in this appeal involve statutory and constitutional interpretation. These are questions of law, which we review de novo, owing no deference to the trial court's determinations.

---

[4] Section 805.17(3), STATS., provides that when a court denies a motion for reconsideration following judgment in a court trial, "the time for initiating an appeal from the judgment commences when the court denies the motion on the record or when an order denying the motion is entered, whichever occurs first."

*Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989). Our review of a summary judgment is also de novo, *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987), but to the extent the trial court went beyond summary judgment methodology and made factual findings, those findings will not be set aside unless they are "clearly erroneous." Section 805.17(2), STATS.

 *b. County Executive's Authority to Veto Rezoning Petitions*

■
We first address McGinnity's claim that a county executive is not empowered to veto rezoning petitions which have been approved by the county board. Phelps argues in his reply brief that McGinnity has waived this issue by failing to raise it before. We disagree. A respondent is always free to present additional grounds for upholding the trial court's judgment or order. *State v. Holt*, 128 Wis. 2d 110, 124–25, 382 N.W.2d 679, 687 (Ct. App. 1985).

Were we to conclude that McGinnity is correct in his claim, there would be no need to address any of the remaining issues in the case. We therefore defer consideration of Phelps's first two arguments (immunity and separation of powers). However, we point out now that we do not interpret Phelps's arguments on immunity and separation of powers as standing for the proposition that a court may not determine whether an executive's veto is authorized by the state's constitution and statutes. Even if Phelps were to make such an argument, we would reject it:

> Since *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), it has been recognized that it is peculiarly

906

the province of the judiciary to interpret the constitution and say what the law is. We deem it to be this court's duty to resolve disputes regarding the constitutional functions of different branches of state government; we may not avoid this duty simply because one or both parties are coordinate branches of government. It is the responsibility of the judiciary to act, notwithstanding the fact that the case involves political considerations or that final judgment may have practical political consequences. We conclude that this declaratory judgment action presents a justiciable controversy.

*Wis. Senate v. Thompson*, 144 Wis. 2d 429, 436–37, 424 N.W.2d 385, 387 (1988) (citations omitted).

McGinnity would have us conclude that "amendatory zoning legislation to change district boundaries" is beyond the reach of Phelps's veto authority, as granted by Article IV, section 23a of the Wisconsin Constitution.[5] He cites cases from other jurisdictions for the proposition that rezoning ordinances are not "general" legislation, but represent decisions on individual properties "for which the veto power is inconsistent with the constitutional guarantees of due process and equal protection."

McGinnity also points to inconsistencies between the county zoning enabling statute and the constitutional executive veto authority. Section 59.69, STATS., formerly § 59.97, STATS., is the county zoning enabling statute. Section 59.69(5)(e)6 provides that amendments to the county zoning ordinance which have the prior approval of affected town boards are "effective on passage" by the county board. Article IV, section 23a of the Wisconsin Constitution provides,

---

[5] *See* n.2, *supra*, for relevant text. Also, *see* § 59.17(6), STATS. (County executive to approve or veto resolutions or ordinances).

however, that "[e]very . . . ordinance passed by the county board . . . shall, before it becomes effective, be presented to the chief [county] executive" for approval or veto. The constitutional executive veto authority was made applicable to all counties in 1969, at which time the predecessor to § 59.69(5)(e) was already in effect. *See* § 59.97(5)(e), STATS., 1969–70. McGinnity argues that since the enabling statute predates the constitutional provision, it must be presumed that "sec. 59.69, Stats., excludes the county executive veto power and that art. IV, sec. 23a, Wis. Const., did not amend those procedures by implication."

We are not persuaded by McGinnity's arguments. In *State ex rel. La Follette v. Board of Supervisors of Milwaukee County*, 109 Wis. 2d 621, 327 N.W.2d 161 (Ct. App. 1982), we considered a similar conflict between a county executive's veto power and a statutory mandate for county funding of sewerage districts. The statute in *La Follette* also predated the constitutional executive veto provision. As in that case, we do not find either the statutory or constitutional provisions at issue here to be ambiguous. The question thus becomes: "Which provision takes precedence?" *Id.* at 629, 327 N.W.2d at 164. We conclude that § 59.69(5)(e), STATS., must yield to the constitutional grant of executive veto authority:

> "The general rule upon the subject is that where there is a conflict between an act of the legislature and the constitution of the state, the statute must yield to the extent of the repugnancy, but no further." *Marsh v. Buck*, 313 U.S. 406, 408 n.3 (1941). "[T]he constitution or a constitutional amendment is of the highest dignity and prevails over legislative acts and court rule to the contrary."

908

> *Kayden Industries v. Murphy*, 34 Wis. 2d 718, 733,
> 150 N.W.2d 447, 454 (1967). "Ordinary acts of the
> legislature, whether adopted before or after the
> date of the constitution, cannot be given effect if to
> do so would contravene a substantive provision in
> the constitution." 1A J. Sutherland, *Statutes and
> Statutory Construction* § 23.20, at 258 (C. Sands 4th
> ed. 1972).

*LaFollette*, 109 Wis. 2d at 629, 327 N.W.2d at 164.

We acknowledge that the enactment, or failed
enactment, of an amendment to a zoning ordinance
relating to a specific parcel of real estate entails
procedural safeguards that are not applicable to other,
more general legislative enactments. We discuss below
how due process concerns germane to zoning actions
impact on the reviewability of an executive veto of a
zoning amendment. The fact that the executive's veto
is exercised "in private," with no additional public
hearing, however, does not require us to hold that an
amendment to a zoning ordinance cannot be vetoed.
Both we and the supreme court have rejected similar
arguments made against the validity of a town board's
statutory "veto" authority over amendments to county
zoning ordinances. *Quinn v. Town of Dodgeville*, 122
Wis. 2d 570, 584–86, 364 N.W.2d 149, 157–58 (1985),
*affirming Quinn v. Town of Dodgeville*, 120 Wis. 2d
304, 315–18, 354 N.W.2d 747, 753–55 (Ct. App. 1984).

In *Quinn*, both reviewing courts concluded that
the veto of a zoning amendment affecting a single
parcel was a "legislative" act, as opposed to being
administrative or judicial in nature:

> "The power to prevent a change in the
> permitted uses to which land can be put is the
> power to preserve an existing zoning. The town's
> power to veto a county zoning ordinance

amendment is as legislative as the power to zone. It is comparable in effect to a zoning authority's refusal to amend the ordinance, which . . . most courts regard as a legislative act."

*Quinn,* 122 Wis. 2d at 578, 364 N.W.2d at 154–55, (quoting with approval from *Quinn v. Town of Dodgeville,* 120 Wis. 2d 304, 309, 354 N.W.2d 747, 750 (Ct. App. 1984) (citation omitted)). We conclude there is no reason that a county executive's veto of a zoning amendment should be viewed any differently than a town board "veto." Thus, it can be said of McGinnity that "[h]is position, though known, was not accepted by [the county executive] acting legislatively and the veto was exercised without violating any constitutional or statutory standards or requirements." *Quinn,* 122 Wis. 2d at 586, 364 N.W.2d at 158.

■ The supreme court in *Quinn* rejected an argument that the town's "veto" power over zoning amendments conflicts with a county executive's constitutional veto authority, stating "the power to veto is constitutionally and legally lodged concurrently in the county executive and the town board." *Id.* at 583, 364 N.W.2d at 157. Given that the question before the court in *Quinn* was the constitutionality of the town board "veto," we do not cite this language in direct support of our conclusion that a county executive may veto zoning amendments. However, we find both the supreme court's and our analyses in *Quinn* consistent with our conclusions that the executive may veto zoning amendments, and in doing so, he or she acts in a legislative capacity.

c. *Judicial Review of County Executive's Veto of Zoning Amendment*

Phelps argues that his veto of the rezoning petition was a discretionary act for which he is immune from suit under § 893.80(4), STATS.[6] He cites our opinion in *Johnson v. City of Edgerton*, 207 Wis. 2d 345, 558 N.W.2d 653 (Ct. App. 1996), for the proposition that the statute precludes "any suit," not just tort actions, against a local official for discretionary acts. Phelps's immunity claim blends into his separation of powers argument when he notes that the supreme court has declared that the "crux" of § 893.80(4) is the doctrine of separation of powers: "The purpose of immunity is to ensure that courts will refuse to pass judgment on the policy decisions made by coordinate branches of government . . . ." *Gordon v. Milwaukee County*, 125 Wis. 2d 62, 65–66, 370 N.W.2d 803, 805 (Ct. App. 1985) (citation omitted). To this, Phelps adds that the trial court's invalidation of his veto is an invasion of the executive's "core zone" of authority and a usurpation of the county board's authority to override an executive veto.

Phelps's argument that his reasons for vetoing the proposed rezoning are beyond the reach of court review might well be persuasive if the object of his veto were "general" legislation and not a zoning action. Zoning actions, however, because they affect the property rights of specific individuals, have traditionally been

---

[6] Section 893.80(4), STATS., provides as follows:

No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes *nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.*

(Emphasis added.)

treated differently than general municipal legislation under both statute and case law. Section 59.69(14), STATS., for example, authorizes a "landowner, occupant or other person who is affected by a county zoning ordinance or amendment, who claims that the ordinance or amendment is invalid because procedures prescribed by the statutes or the ordinance were not followed" to commence an action to contest the validity of the zoning enactment. And, the supreme court has held that the failure of a county board to grant a rezoning request is similarly subject to court review. *See Buhler v. Racine County*, 33 Wis. 2d 137, 146, 146 N.W.2d 403, 407 (1966); *see also Quinn*, 122 Wis. 2d at 585, 364 N.W.2d at 157–58 (town board veto of zoning amendment is subject to judicial review).

In *Buhler*, the trial court concluded that the county board, by refusing to rezone the plaintiffs' property, had deprived the plaintiffs of due process and equal protection of the law, had abused its discretion, and had acted arbitrarily and unreasonably. *See id.* at 142–43, 146 N.W.2d at 405–06. The supreme court reversed the judgment, which had enjoined the county from enforcing its zoning ordinance as it applied to plaintiffs' property. The court noted that courts in Wisconsin and elsewhere "have power to grant relief against zoning when it is unconstitutional, unreasonable or discriminatory," but that judicial review is very limited:

> [S]ince zoning is a legislative function, judicial review is limited and judicial interference restricted to cases of abuse of discretion, excess of power, or error of law. Consequently, although a court may differ with the wisdom, or lack thereof, or the desirability of the zoning, the court, because of the fundamental nature of its power, cannot substitute

its judgment for that of the zoning authority in the absence of statutory authorization. This rule applies not only to the necessity and extent of zoning but also to rezoning, classification, establishment of districts, boundaries, uses, and to the determination of whether or not there has been such a change of conditions as to warrant rezoning.

*Id.* at 146–47, 146 N.W.2d at 408 (citations omitted).

McGinnity's circumstances are no different than those of the plaintiffs in *Buhler* and *Quinn*. In each case, an individual's request to have his or her property rezoned under a county ordinance was denied at some stage in the local legislative process. To accept Phelps's argument that his action in vetoing the rezoning request is immune from review would mean that the availability of a remedy for an alleged abuse of discretion in the denial of a rezoning request would depend upon which actor in the legislative process commits the abuse. If the denial results from county board action (*Buhler*) or town board action (*Quinn*), judicial review is available. We conclude that the same must be true for a county executive's veto which denies a petition to rezone property.

Finally, we return to Phelps's contention that § 893.80(4), STATS., and our holding in *Johnson*, 207 Wis. 2d 345, 558 N.W.2d 653, precludes this action. The plaintiffs in *Johnson* sued the city after it had refused to open a platted street "stub-end" which would have connected plaintiffs' property, lying outside the city, to a city street. In addition to compensatory and punitive damages for the city's "negligence" in denying them access to the city street, they also requested "an injunction requiring the City to open the road to their property." *Id.* at 349, 558 N.W.2d at 654–55. We

concluded that the public policy considerations underlying § 893.80(4) "apply just as earnestly to an equitable action seeking injunctive relief against the agency or the official as they do to one for the recovery of money." *Id.* at 354, 558 N.W.2d at 656–57. And, following the supreme court's reasoning in *DNR v. City of Waukesha*, 184 Wis. 2d 178, 515 N.W.2d 888 (1994), we held that:

> [T]he official immunity provisions of § 893.80(4), STATS., like the notice and claim provisions of § 893.80(1), are not limited to tort or money-damage actions, but are *equally applicable to actions which, like the Johnsons', seek injunctive relief against the governmental subdivision or employee.*

*Johnson,* 207 Wis. 2d at 354, 558 N.W.2d at 657 (emphasis added) (footnote omitted).

McGinnity seeks a declaratory judgment invalidating Phelps's veto and reinstating the county board's approval of his rezoning petition. Under the declaratory judgment statute,

> [a]ny person . . . whose rights . . . are affected by a statute [or] municipal ordinance . . . may have determined any question of construction or validity arising under the . . . statute [or] ordinance . . . and obtain a declaration of rights, status or other legal relations thereunder.

Section 806.04(2), STATS. The statute requires that "all persons . . . who have or claim any interest which would be affected by the declaration" must be made a party to an action for declaratory judgment. Section 806.04(11). We conclude that a declaratory judgment action is not a "suit . . . brought against" Phelps or Dane County within the meaning of § 893.80(4), STATS. McGinnity's

action seeks neither money nor injunctive relief from Phelps or the county; they are named as parties only so that they can be heard on the question presented. *See* § 806.04(11), (no declaration may prejudice rights of persons not parties; municipality must be a party when its ordinance is at issue, and it shall "be entitled to be heard").

■

Our concern in *Johnson* was that suits for injunction, no less than those for money damages, might "unduly hamper[ ] or intimidate[ ]" local officials in the execution of their discretionary, legislative functions; deprive them of "valuable time"; and improperly involve the courts in the policy decisions of coordinate branches. *Id.* at 354, 558 N.W.2d at 656. Some of these same considerations may apply to declaratory judgment actions, but the legislature has determined that they are outweighed by the need to afford citizens an opportunity for a court to declare their rights. Given the express statutory authorizations under §§ 806.04 and 59.69(14), STATS., for citizens affected by local ordinances in general, and county zoning ordinances in particular, to seek a judicial determination of rights, we conclude that § 893.80(4), STATS., is not a bar to this action for a declaratory judgment.

*d. Trial Court's Determination That Veto Was Invalid*

As we have discussed above, Phelps's legislative act in vetoing the zoning amendment sought by McGinnity is subject to limited judicial review: "judicial interference [is] restricted to cases of abuse of discretion, excess of power, or error of law." *Buhler*, 33 Wis. 2d at 146, 146 N.W.2d at 408; *Quinn*, 122 Wis. 2d

at 580–81, 364 N.W.2d at 155–56. The trial court's invalidation of the veto was based on its conclusion that Phelps had acted "arbitrarily and capriciously," largely because Phelps had not vetoed what the court found were similar rezoning petitions. In essence, the trial court concluded that the veto represented an abuse of discretion. (McGinnity asserts that the trial court invalidated Phelps's veto because it concluded that McGinnity's equal protection rights had been violated. The distinction is not crucial, however. As the supreme court noted in *Buhler,* "an attack based on the arbitrariness or unreasonableness of a legislative action is the equivalent of a claim of unconstitutionality based on a denial of equal protection of the laws or due process." *Id.* at 143, 146 N.W.2d at 406.)

The parties dispute whether it was proper for the trial court to consider the evidence submitted by McGinnity, which consisted of copies of seven rezoning petitions which had been approved by the county board and Phelps in 1994 and 1995. Each of the seven zoning amendments reclassified a rural parcel from agricultural to residential, or from a more restrictive to a less restrictive residential classification. Phelps argues that the unverified, uncertified copies did not meet the requirements of § 802.08(3), STATS., for matters submitted in support of summary judgment, and further that they did not meet the requirements of Chapter 909, for authentication of documents submitted as evidence. McGinnity counters that Phelps waived these issues by not agreeing to adjourn the trial court proceedings to allow the documents to be authenticated. Phelps also claims, however, that the prior petitions should not have been considered because there was no showing that the parcels and

circumstances in the prior rezonings were similar to McGinnity's.

For the purpose of our analysis, we will consider McGinnity's submissions to have been properly before the trial court, and we will accept the court's factual finding that Phelps approved seven rezoning petitions similar to McGinnity's. We conclude that the record does not support the trial court's declaration invalidating Phelps's veto because McGinnity has not met his burden to show that Phelps's veto was an abuse of discretion, in excess of his power, or an error of law. This is a question of law which we determine de novo. *"K" Care, Inc. v. Town of Lac du Flambeau*, 181 Wis. 2d 59, 65, 510 N.W.2d 697, 699 (Ct. App. 1993). It is not necessary, therefore, for us to address the evidentiary issues.

Both the constitutional and statutory provisions relating to a county executive's veto authority require the executive to return the vetoed measure to the county board "with his [or her] objections."[7] Phelps did so in this case. The complete text of his veto message is set forth in the appendix to this opinion.

Even though a court may question the wisdom or desirability of a specific zoning action, it may not substitute its judgment for that of the zoning authority. *Buhler*, 33 Wis. 2d at 146–47, 146 N.W.2d at 407–08. An exercise of legislative discretion by a zoning authority may not be disturbed on judicial review if there is any "reasonable basis" for the action taken. *Jefferson County v. Timmel*, 261 Wis. 39, 62–63, 51 N.W.2d 518, 529–30 (1952). Phelps's veto was not arbitrary or unreasoned; it was premised on his

---

[7] WIS. CONST. art. IV, § 23a; Section 59.17(6), STATS.

interpretation of county and town land use and development plans and policies, which are proper considerations in deciding whether to grant rezoning. *Buhler*, 33 Wis. 2d at 148, 146 N.W.2d at 408 ("Rezoning . . . should be based upon long-range planning and purposes for the whole community and not upon isolated considerations.").

Thus, we conclude that Phelps's action in vetoing McGinnity's proposed rezoning bore a "substantial relation to the public health, safety, morals or general welfare." *See Cushman v. City of Racine*, 39 Wis. 2d 303, 311, 159 N.W.2d 67, 72 (1968). It may be that the twenty members of the county board who voted to approve McGinnity's petition do not share Phelps's interpretation of the county's planning policies relating to rural residential development. The resolution of that conflict, however, is a matter for the actors in the legislative process, and possibly the political and electoral processes; it is not for the courts to resolve. *See Buhler*, 33 Wis. 2d at 146, 146 N.W.2d at 407.

McGinnity also argues that Phelps's veto was in excess of his power because the policies cited in the veto message were not a part of the county's "comprehensive plan," which he claims the zoning ordinance itself constitutes. We reject this argument for the same reason the supreme court rejected a similar argument in *Quinn*: "The . . . veto of the county board zoning amendment preserved the status quo and there has been no showing that the use of the veto blocked or interfered with any county comprehensive planning, but rather, the veto precluded a single parcel deviation from the existing planning." *Quinn*, 122 Wis. 2d at 584, 364 N.W.2d at 157.

Finally, McGinnity claims that there was no rational reason for Phelps to apply the density policy

and other considerations recited in the veto message to his petition and not to the seven others. He implies that it was Phelps's burden to justify the differential treatment. We disagree. While the Equal Protection Clause[8] provides a "last-ditch protection against governmental action wholly impossible to relate to legitimate governmental objectives," McGinnity has the burden to prove that Phelps's action was taken "for reasons wholly unrelated to any legitimate state objective." *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995) (citation omitted). He has not done so.

The supreme court acknowledged in *Buhler* that discriminatory treatment might be shown if a given property were zoned differently than its immediate neighbors, that is, "spot zoning." *Buhler*, 33 Wis. 2d at 145–46, 146 N.W.2d at 407. McGinnity does not claim that the veto of his petition constitutes unlawful spot zoning of his parcel. Rather, his claim is that Phelps, in vetoing his petition and not the others, selectively enforced the county density policy, and thus violated his right to equal protection of the laws.

The burden to show an equal protection violation is on McGinnity, who must demonstrate that he was the object of differential treatment for improper or unlawful reasons. *See State v. Cook*, 141 Wis. 2d 42, 46–47, 413 N.W.2d 647, 649–50 (Ct. App. 1987) (where fundamental interest not involved, challenger of discretionary action has burden to disprove existence of rational basis for action by showing intentional discrimination). McGinnity has not met this burden. At best, he has demonstrated that certain similarly situated landowners were successful in obtaining

---

[8] U.S. CONST. amend. XIV, prohibits state action which denies "to any person within its jurisdiction the equal protection of the laws."

rezoning for rural residential purposes, but he was not. This is an insufficient showing:

> [E]vidence that a municipality has enforced an ordinance in one instance and not in others would not in itself establish a violation of the equal protection clause. There must be a showing of an intentional, systematic and arbitrary discrimination.

*Village of Menomonee Falls v. Michelson,* 104 Wis. 2d 137, 145, 311 N.W.2d 658, 662 (Ct. App. 1981) (citations omitted).

In order to require a government official or governing body to justify why a certain legislative decision was made in one instance but not in others, more is needed than simply a showing that different decisions were made on different occasions. *See Nick v. State Highway Comm'n,* 21 Wis. 2d 489, 496, 124 N.W.2d 574, 577 (1963) ("mere inconsistency" does not rise to level of equal protection violation). The reasons given by Phelps for the veto of McGinnity's petition are set forth at length below. They relate to legitimate governmental concerns regarding land use and development. McGinnity points to no "wholly unrelated reasons," nor to any unlawful or discriminatory basis for the veto of his petition, and the record discloses none.

■

We conclude that the facts of record in this matter, viewed most favorably toward McGinnity, do not establish that Phelps abused his discretion, exceeded his power or committed an error of law in vetoing the rezoning petition. At best, the record establishes that Phelps made inconsistent legislative decisions in similar situations. That does not constitute a basis for

judicial invalidation of the veto. Accordingly, we reverse the judgment which invalidated the veto and reinstated the board's approval of the petition. We remand for the entry of judgment in favor of Phelps, dismissing McGinnity's complaint.

*By the Court.*—Judgment reversed and cause remanded with directions.

## APPENDIX

The complete text of Phelps's veto message is as follows:

All three of the zoning petitions listed above are in violation of their respective adopted Town Plans and the County's adopted Farmland Preservation plan. Therefore, I am vetoing Zoning Petitions 5733, 5740 and 5742 passed by the County Board at its meeting of October 21, 1993.

On June 29 of this year, as part of the "Preserve Dane Campaign," I announced my intentions to enforce the density and development standards listed in each adopted Town Plan and the County's adopted Farmland Preservation plan.

Specifically, at that time, I stated the following criterion:

- I will not sign into law any rezonings that are clearly outside the density and development standards listed in the adopted Town Plans. I will only sign rezoning petitions that follow the basic standards in the county's adopted Farmland Preservation Plan and the adopted Town Plans.

The intent is to limit scattered development throughout Agricultural Preservation areas at higher densities than were agreed to by the towns in their adopted Town Plans and the County Board in

its Farmland Preservation Plan. In order to protect a Town's agricultural base, the adopted Town Plans allow no more than one residence per 35 acres in Agricultural Preservation areas. The effect of the density policy is to limit the "intensity and amount" of development scattered through the countryside and in agricultural areas. The more intense the development in agricultural preservation areas, the more speculation there is on land, property taxes rise and agriculture becomes less viable.

We should either follow the adopted Town and County plans or change them. While the density policy is a standard method used countywide, statewide and nationwide for protecting agriculture, if there are better ways to save our agricultural base let us debate them and adopt them into our plans. But for now, I will enforce the basic tenets of the plans. This obviously is not the total solution, but if the respective Boards begin to follow their own adopted criteria, we will have made a quantum leap forward in the mentality of "consistency" in county zoning. By holding to the density standards in adopted plans, we are enforcing a basic level of planning "consistency," which is a stated primary goal of the recently completed Dane 2020 process.

Currently there is much inconsistency in how petitions for rezonings for unsewered residential development are treated at both the Town Board and County Board levels of government. The decisions that are made are fairly arbitrary and are made in the face of sympathetic people who ask for zoning decisions inconsistent with adopted plans. At the Town Board level it is hard to say "no" to people you know. It is particularly hard for Town representatives to say no to a zoning applicant, based on the Town plan, when the applicant can say

that the County Zoning Committee will not follow the Town plans in its ultimate decisions.

The Dane County Zoning Ordinance states that the Dane County Zoning and Natural Resources Committee "shall use plans and maps developed by individual towns and approved by the County Board as criteria for zoning recommendations." This has not been happening. Over the past eighteen months there has been a steady erosion—rezonings of "five parcels here" and "two parcels there" that do not follow the density standards of either the adopted Dane County farmland preservation plan or the adopted town plan.

While looked at in isolation, an individual zoning petition may look relatively benign, but each time we allow an individual zoning petition that violates adopted plans we steadily erode the legitimacy of our adopted plans. Each time you allow an individual zoning petition that violates adopted plans you are actually voting for hundreds of homes to be scattered throughout agricultural preservation areas. As precedents are set, how can you say no to future requests?

Again, as I stated in June, we at the county level of government should not make judgments, properly reserved for Town Boards, about things like soil types and locations of driveways etc. But I will hold the Town Boards and County Board to the density standard adopted in their adopted plans. The density standard in the adopted County Farmland Preservation Plan, and the adopted

Town Plans, is the most legitimate, consistent and understandable criterion we currently have for basing zoning decisions.